Merrimack, ⎱
July 1, 1953. ⎰ No. 4206.

BERKE MOORE COMPANY, INC. *v.* PHOENIX BRIDGE COMPANY.

*Upton, Sanders & Upton* (*Mr. Robert W. Upton* orally), for the the plaintiff.

*Wyman, Starr, Booth, Wadleigh & Langdell* (*Mr. Wadleigh* orally), for the defendant.

DUNCAN, J. The Trial Court found and ruled: "The contract between the parties consists of the subcontract and the plans and specifications referred to therein." The dispute between the parties arises out of the following provision of the specifications, which appears in article 4.06.15 entitled "Measurement": "The quantity of concrete to be paid for under Item 15a Concrete in Bridge Deck shall be the number of square yards of concrete surface included in the bridge deck, including the sidewalk. The concrete curbs shall be considered incidental to this item." The rights of the parties turn upon the interpretation of the quoted provisions.

"Item 15a" was an item in the proposal invited by the State in seeking bids on a unit basis. As to this item, the Phoenix Bridge Company was entitled by its contract to receive $12.60 per square

yard. The bid of the plaintiff as a subcontractor was $12 per square yard. The printed proposal upon which bids were made stated as the approximate quantity for this item: "3,933 S. Y." It further stated, "It is understood that the estimate of quantities of work to be done and materials to be furnished, as given in this proposal, is approximate and is to be used only for comparing bids. The Department assumes no responsibility whatsoever, that the quantities given will prevail in the actual construction. Payment will be made only for actual quantities of work performed or materials furnished in accordance with the Contract . . . . In case of any discrepancy between a unit price and the corresponding amount, the unit price shall be considered binding."

The provision of the specification for payment for the "number of square yards of concrete surface in the bridge deck" was a part of the contract between the State and Phoenix Bridge Company and became a part of the subcontract with the plaintiff by reason of its undertaking to furnish and install the work described therein as Item 15a "Concrete in Bridge Deck," and the further provision that "the subcontractor shall be bound by and conform to the general specifications in all respects wherein they apply to the work embraced in this agreement." The subcontract further provided that the plaintiff should be paid upon the following basis: "Item 15a—Concrete in Bridge Deck: TWELVE DOLLARS ($12.00) per square yard for the quantity of material approved by the State Highway Commission."

The bridge deck which the plaintiff undertook to construct is approximately 1,200 feet long, divided into two sections by the draw bridge section of the bridge. The deck is supported by an open frame work of steel girders, floor beams and stringers which rest upon piers arising from the river bed. Each section of the deck is a rectangular slab of concrete approximately 565 feet long, 33 feet wide and 7 inches thick. The curbs referred to in the specification run lengthwise of the deck and are approximately 9 inches high. The westerly curb is located at the extreme edge of the deck, and is approximately 17 inches wide at its base and 16 inches at its top. The easterly curb separates the traveled way from the sidewalk and is approximately 12 inches wide at the base and 11 inches at the top.

The plaintiff claims to be entitled to payment for the number of square yards included in the outer surfaces of the deck, including top, bottom and sides, and in the surfaces of the curbs. The

defendant denies that it is entitled to payment for more than the number of square yards contained in the upper surface of the deck itself.

The conclusions of the Trial Court with respect to the conflicting claims of the parties were as follows: "Upon all the evidence and in the light of all the attendant circumstances, the Court finds that on June 12, 1947, when the parties used and adopted the language in question, they intended that the concrete surface of the bridge deck for which the Plaintiff was to be paid at $12.00 per square yard was to consist of the total top surface of the deck, including the roadway, sidewalk and space occupied by the curbs. The three exposed surfaces of the curbs were not to be included in computing the total surface since the contract specifically states that the curbs shall be 'considered incidental' in the matter of measurement. The number of square yards included in this surface is 4,184 and for this number of yards the Plaintiff has either been paid or the money has been deposited in Court."

The plaintiff excepted to this finding, taking the position that the language of the integrated agreement of the parties is plain and unequivocal and entitles the plaintiff to payment for the total number of square yards in the entire outer surface of the bridge deck including curbs. It further contends that other findings upon which the verdict rests are erroneous because based upon extraneous evidence relating to the plaintiff's understanding of the written agreement, and because inconsistent with the intention of the contracting parties as disclosed by the written agreement. The defendant contends that the verdict of the Trial Court should be sustained, and further that, contrary to the Court's ruling, the plaintiff is bound by a determination by the State Highway Commissioner that the quantity of concrete to be paid for under Item 15a should be 4,184 square yards.

The plaintiff duly excepted to a finding and ruling that the words "concrete surface included in the bridge deck" are "not so plain and clear that reasonable men could not differ as to their meaning," upon the ground among others that "read in their context and in the light of attendant circumstances [they] are not ambiguous." We are of the opinion that the finding and ruling was warranted. Certainly apart from their context, and in at least one of the senses of normal usage, the words might be taken to refer only to the upper surface of the bridge deck. "Surface: ... the uppermost layer ... the upper boundary or top of ground or ... water." Oxford

English Dictionary (1919). In this sense we speak of the surface of the ground, or of a lake, or of a highway. It is true that when the words are considered in their context and against the plans and specifications, a strong argument can be made for the proposition that by "surface included in the bridge deck," the entire outer surface was meant, or at least something more than the upper surface alone. See *Selectmen of Natick* v. *Boston & Albany R. R.*, 210 Mass. 229. The specifications indicate that the several surfaces of the deck, as well as its content, were of concern to the State. They provide with great particularity requirements for the construction of forms for "surface which will be visible," for the curing of the "underside" and the "upper and side surfaces," for the cleaning of "surfaces" and the protection of "surfaces" against cold. Without violence to the language used, it could reasonably be concluded that all of these surfaces were deemed a part of the "surface included in" the deck.

On the other hand, it was likewise readily apparent from the plans and specifications that the upper surface of the bridge approximated 4,000 square yards, or 4,600 square yards according to the plaintiff's president. The plaintiff's bid, as well as the defendant's was made upon the estimated quantity of 3,933 square yards. While the proposal form furnished by the defendant, part of which was adopted by the plaintiff in its bid on Item 15a, did state that the estimate of 3,933 square yards was to be "used only for comparing bids," and that actual quantities should control for payment, it also stated that the "estimate of quantities . . . is approximate." This provision might reasonably be taken to indicate that the bid requested and made, being upon a quantity which actually approximated the area of the top surface alone, was predicated upon payment for that surface only. In this view, a bid made upon an interpretation requiring payment for 8,100 square yards would not reasonably be considered a bid upon a quantity approximating 3,933 square yards.

The Trial Court's conclusion that the "words in question are not so plain and clear that reasonable men could not differ as to their meaning," when applied to the subject matter of the contract or the "state of the property" (*Weed* v. *Woods*, 71 N. H. 581, 583) was warranted. "[T]he 'ambiguity' seldom appears until the attempt is made to apply the words to existing facts by the use of parol evidence." 3 Corbin on Contracts 81, 82.

In this situation, the question presented was what the parties

meant by the words which they employed. What intention did they express? *Kendall* v. *Green*, 67 N. H. 557, 562, and cases cited. The plaintiff's proposal, contained in its letter of May 7, 1947, to the defendant's predecessor, was to "construct the work called for in the items detailed below . . . according to the plans and specifications of the New Hampshire State Highway Dept. for the following schedule of prices: . . . Item 15a Concrete in Bridge Deck 3933 s. y. 12.00 $47,196.00." The form of the bid indicates a close following of the form of proposal accompanying the specifications, and the testimony of the plaintiff's president showed his familiarity with the quantity estimate in the proposal form.

It might be argued that since the form prepared for the State was proffered by the defendant's predecessor in seeking bids from subcontractors, ambiguities should be resolved against it as the one responsible for the language used. Cf. *Pfotzer* v. *United States*, 77 F. Supp. 390, 394. It is unnecessary however to rely upon arbitrary rules of construction. Evidence of extraneous circumstances tending to show what the words of the contract meant to the parties was properly received by the Trial Court. "The question . . . is merely what the mutual understanding of the parties was as to the meaning of certain language. The evidence is received because it tends to show 'that which was in the minds of the parties.'" *Weston* v. *Ball*, 80 N. H. 275, 277. This evidence related in part to conduct and statements of the plaintiff's president and of representatives of one of the defendant's predecessors, in negotiations which led to the supplementary agreement of April 4, 1949, with the Phoenix Bridge Corporation. The plaintiff argues that the evidence of what occurred at that time has no tendency to show the understanding of the predecessor of Phoenix Bridge Corporation when the original contract was executed in June, 1947, (*Boston & Maine Railroad* v. *Railroad*, 86 N. H. 217), and that the uncommunicated understanding of the plaintiff alone may not be allowed to explain the meaning of the written contract. See *Pettee* v. *Chapter*, 86 N. H. 419, 423. There can be no quarrel with the principles thus relied upon, but they are not considered decisive of this case.

There was much evidence bearing upon the interpretation placed by the plaintiff upon the contract, but none of the understanding of the Phoenix Bridge Company which executed the original subcontract except as it might be gathered from the original documents. The plaintiff's president testified that in accordance with his under-

standing of the language the plaintiff's bid was prepared upon a basis of the entire exterior surface of the deck, that he understood that the plaintiff was to be paid upon that basis, and that the estimate of 3,933 square yards used in the bid was without significance except for the purpose of comparing bids. The Trial Court found nevertheless that in submitting its bid "the plaintiff interpreted the proposal . . . to mean that only the square yards of top surface of the bridge deck would be paid for in Item 15a," and further that "when the contract . . . was entered into on June 12, 1947, both parties understood that only the top surface of the bridge deck was to be used in measuring the number of square yards of concrete to be paid for . . . ." These findings and the use made of them in reaching the verdict are attacked by the plaintiff.

The finding concerning the plaintiff's understanding was warranted by the evidence. There was a conflict in the testimony as to whether the plaintiff's president in 1949 submitted to representatives of the Phoenix Bridge Corporation detailed estimates of costs from which he arrived at the bid figure of $12 per square yard. The Court could believe from the testimony that he did submit such detail, and that the figure of $12 was arrived at from computations fixing a price of $60 per cubic yard. Considered as sufficient to cover an area of approximately five square yards of the required thickness of seven inches, a cubic yard priced at $60 would indicate a figure of $12 for a square yard. The testimony that because five square yards of deck would include ten square yards of surface, top and bottom, and that therefore the real basis of the bid was $120 per cubic yard did not require acceptance. The plaintiff's president conceded that in seeking additional compensation in 1949, he had presented figures identical with those contained in the plaintiff's bid, which were contrasted with the following figures designed to reflect increased costs during the delay in commencing the work: "3933 sy @ 15 - 58995." He asserted at the trial that the essence of his request in 1949 was the increase from twelve to fifteen dollars a square yard, that is, the increase in the unit price, and never receded from his position that the estimated number of square yards which he used, and the total amount carried out in dollars were without particular significance since payment was to be made for "actual quantities." The fact remains that he admittedly then sought a total increase in compensation, before the plaintiff should start work, of about $25,000 for the entire contract, a figure which included some $11,000 on

account of item 15a; and that he agreed to accept as a compromise an "Additional Payment" of $16,250 in lump sum amount, without regard to the unit increases in any items, much less the unit increase of $3 per square yard for item 15a which he emphasized at the trial.

The Trial Court might reasonably conclude that had he in fact attached the claimed significance to the unit price at that time, he would not have been content with an increase which disregarded unit prices; and that his conduct in accepting a lump sum increase reflected an understanding of the original contract held at the time of execution which was opposed to the understanding asserted at the time of the trial. See 3 Corbin on Contracts, s. 539 at p. 53. Certainly if the Court chose to believe the defendant's witnesses, it could properly reach the conclusion which it did, concerning the plaintiff's understanding when its bid was made.

The question remains whether proper use was made of the evidence of the plaintiff's understanding in arriving at the conclusion that both parties understood the contract in the way in which the plaintiff was found to have understood it when its bid was submitted. The plaintiff contends that the record is devoid of evidence of what the original Phoenix Bridge Company understood or intended, and that the contract may not be interpreted according to the understanding of the plaintiff alone. The flaw in the argument is in its major premise. See *Steinberg* v. *Steinberg*, 95 N. H. 461.

It may fairly be said that there was no *direct* evidence of what the original Phoenix Bridge Company understood or intended by the language "number of square yards included in the surface of the . . . deck." No one who represented it in the negotiation and execution of the contract was a witness at the trial. It is reasonably apparent however from the documentary evidence that whatever may have been the understanding of the parties to the subcontract, their understanding was the same. This conclusion rests upon the probabilities, and in interpreting the contract, probabilities may properly be relied upon, at least in the absence of a surer guide. *First Nat'l Bank* v. *Savings Bank*, 71 N. H. 547, 550.

The contract between the State and Phoenix Bridge Company was the first to be executed. The company then had before it the same documents which the plaintiff later used in making its subcontract bids. The Bridge Company was awarded the general

contract for the superstructure, upon a bid, as to Item 15a, of $12.60 per square yard. This of itself would not establish that square yards of top surface rather than of total surface was understood. But the Bridge Company in turn accepted the plaintiff's bid of $12 per square yard. It is reasonable therefore to assume that both parties to the subcontract understood the contract in the same way, whether they thought in terms of 4,000 square yards or 8,000 square yards. If the bid of one was based upon the former quantity, while that of the other was based upon the latter, it is reasonable to suppose that the unit price of the first would not have been within five per cent of the second but more nearly twice it, in order to assure compensation for the double surface involved. Conversely stated, assuming comparable costs, a bid predicated upon payment for both a yard of top surface and a yard of bottom surface would produce a unit figure approximating one-half of that of a bid based upon a square yard of top surface alone. Experienced contractors such as were involved in these transactions would not be expected to reach such comparable results, if their understanding of the quantities involved were diametrically opposed.

It follows from this analysis that Phoenix Bridge Company could properly be found to have interpreted the contract in the same way that the plaintiff did. From this premise, properly reached upon the evidence, the Court could reasonably find the understanding of the original Phoenix Bridge Company by reference to the plaintiff's understanding. The rule which precludes the use of the understanding of one party alone is designed to prevent imposition of his private understanding upon the other party to a bilateral transaction. IX Wig. Ev. (3rd *ed.*) *s.* 2460; *Smart* v. *Huckins*, 82 N. H. 342, 348. But when it appears that the understanding of one is the understanding of both, no violation of the rule results from determination of the mutual understanding according to that of one alone. Where the understanding is mutual, it ceases to be the "private" understanding of one party. Having thus determined the mutual understanding of the parties, the Court properly interpreted the contract accordingly.

The plaintiff excepted to the finding or ruling that "the three exposed surfaces of the curbs were not to be included in computing the total surface since the contract specifically states that the curbs shall be 'considered incidental' in the matter of measurement," and to the further finding that the plaintiff was to be paid for the

"total top surface" including the "space occupied by the curbs" rather than their surface.

While the specification provision relating to payment for the curbs is contained in the paragraph entitled "Measurement," it does not state that they shall be " 'considered incidental' in the matter of measurement," as the Court found. The statement made is: "The concrete curbs shall be considered incidental to this item." The "item" referred to is "Item 15a." The sentence indicates that the curbs were not to be considered a separate item for purposes of bid and payment, but a part of the item "Concrete in Bridge Deck." Since the plaintiff was held to be entitled to payment for square yards of concrete in the upper surface of the deck, it is entitled to compensation for the surfaces of the curbs which are "included in" that upper surface. The curbs were not a negligible factor in the work, but required special ingredients, and special surfacing. They were to be "considered" and not disregarded in payment. The "space occupied" by the curbs may not reasonably be considered a part of the "surface," when in fact it is beneath the surface of what is an integral part of the deck.

The plaintiff's claim is that the upper surface including the curbs contains 4,568 square yards, which suggests that it is entitled to additional compensation for 384 square yards. However, since the surface area of the curbs was not determined by the Court, the case will be remanded for an appropriate finding, and such modification of the verdict as is called for thereby.

Modification to provide compensation for the surfaces of the curbs requires that consideration be given to the defendant's contention that the decision of the State Highway Commissioner in the matter of quantity is final, and a favorable decision by him a condition precedent to the right to compensation. The specifications provide that certain provisions of the "N. H. Specifications" shall apply with respect to "Authority of Engineer" and "Commissioner to be Referee." This reference is to the Highway Department "Standard Specifications for Road and Bridge Construction," and the particular provisions cited bear the captions quoted above and provide in substance that the department engineer "shall decide all questions which may arise as to the interpretation of the plans and specifications and . . . as to compensation," and that in case of dispute the Highway Commissioner shall "decide over" any decisions of the engineer and determine the "quantity of work performed . . . to be paid for under the contract." It is further

provided in the "N. H. Specifications" that the Commissioner's decision shall be "final and conclusive" and his "estimate" a "condition precedent to the right of the Contractor to receive any money due under the Contract."

The Commissioner's final determination of the pay-quantity for Item 15a was 4,184 square yards, and the State made payment to the defendant upon this basis. The Trial Court ruled that the decision of the Commissioner "was a correct and reasonable decision," and "not fraudulent, arbitrary, capricious nor based upon any mistake of fact or law." The Court further ruled however that "the contract does not provide that [his] determination of the question in dispute here is final and binding on the parties to this action."

In view of the conclusion reached that it was error not to compensate the plaintiff for the surface area of the curbs, the ruling that the decision of the Commissioner was correct is not sustainable. The ruling that it was not final and binding upon the parties however appears to us to present no error, and is sustained. The contract between the parties to this action contained two references to the specifications for the bridge, beside the plaintiff's undertaking to do the work "in accordance with the plans and specifications." These were its undertaking to "be bound by and conform to the general specifications in all respects wherein they apply to the work embraced in this agreement," and to "conform to all requirements of the general specifications in regard to obtaining and employment of labor and hours worked." The subcontract further provided that payment would be made as to Item 15a "for the quanity of material approved by the State Highway Commission," which the Trial Court ruled meant State Highway "Commissioner."

The provisions of the "general specifications" which relate to "the work embraced in" the subcontract contain no reference to the provisions of the N. H. specifications defining the authority of the State Engineer and Commissioner. Accordingly these provisions upon which the defendant relies may not be considered incorporated by reference in the subcontract.

Moreover it is apparent that the decision of the Commissioner was made with reference to the contract between the State and the defendant, since the plaintiff received no notice from the Commissioner either of any hearing or of his decision.

Our conclusion that the provisions of the "N. H. Specifications" relied upon by the defendant are inapplicable, make it unnecessary

to determine the further contention of the plaintiff that the Commissioner and engineer were disqualified to decide the question by reason of interest. See *Boston & Maine R. R.* v. *Railroad*, 83 N. H. 312; *Frederick Snare Corp.* v. *Maine-New Hampshire I. B. A.*, 41 F. Supp. 638; *Cf. Ferguson Co.* v. *Keene*, 89 N. H. 410.

Other exceptions taken by the parties require no separate consideration. The defendant's exceptions are overruled and the plaintiff's sustained in part. There must be a new trial for the purpose of determining the additional compensation to which the plaintiff is entitled for the area of the surface of the curbs, less the area beneath the curbs for which compensation was given in the original verdict.

*New trial as limited.*

Goodnow, J., did not sit: the others concurred.