Belknap
No. 6452

COPELAND PROCESS CORPORATION

v.

NALEWS, INC.

November 30, 1973

*Laurence F. Gardner,* by brief and orally, for the plaintiff.

*Nighswander, Lord, Martin & KillKelley (Mr. Willard G. Martin, Jr.* orally) for the defendant.

DUNCAN, J. In 1966 the plaintiff was under contract with the Franconia Paper Corporation to furnish a chemical recovery system at the Franconia plant in Lincoln. It was also under contract with the town of Lincoln to install pollution control equipment at the same plant to solve a water pollution problem. The town project, financed by federal funds and proceeds of bonds issued by the town, had a completion date in November 1968. This action of assumpsit was brought to recover damages alleged to have been suffered by the plaintiff as the result of alleged breach by the defendant of a subcontract entered into in May 1966, by which the

defendant undertook to furnish labor, materials and services in connection with construction and installation of the town sulphite disposal system pursuant to the plaintiff's contract with the town.

Thereafter the parties to the action stipulated as follows: "To submit for the decision of the Court for a hearing on the merits the question of fact and law as to what effect, if any, a document signed by the parties dated October 2, 1968, a copy of which is attached hereto, had on the rights and duties of the parties relating to the plaintiff's purchase order #6605 901-3 dated May 1, 1968, together with all correspondence incorporated thereto by reference and as subsequently modified by change orders CO 1, 2, 3 and 4."

The agreement referred to as the document of October 2, 1968, was on stationery of the plaintiff company addressed to the defendant company, attention of Mr. Phil Swett, President. It read as follows: "Gentlemen: You and we hereby agree, for and on behalf of our separate companies, that as of 4:30 P.M. of this date of October 2, 1968, the contract agreement entered into by our companies for the Lincoln N.H. project and covered by our purchase order 6605-901-3 of May 1, 1968, together with change orders CO #1, CO #2, CO #3 & CO #4 are hereby cancelled without prejudice by mutual agreement.

"We also agree that as quickly as possible, an accounting of all costs on the contract will be assembled and settlement made between Copeland Process Corp & Nalews Inc.

"Nalews will promptly submit a statement of cost under the contract to date together with an inventory of pipes, valves fittings purchased and on site at the job. Copeland Process Corp will purchase those materials, already on the site, which have not previously been included in cost statements.

"Agreed & Accepted for Copeland Process Corp. G G Copeland President. Accepted & Agreed Upon for Nalew's Inc. Philip E. Swett President."

The issue presented by the stipulation was tried to the Court (*Keller*, C.J.), and resulted in findings and rulings favorable to the defendant. The plaintiff excepted to the findings

and rulings and to certain rulings made in the course of the trial, and its exceptions were reserved and transferred by the presiding justice.

At the trial the plaintiff excepted to receipt of evidence of circumstances surrounding execution of the agreement of October 2, 1968. The plaintiff maintains that the agreement is unambiguous, and that parol evidence was inadmissible to vary its meaning. It contends that by agreeing that the contract of May 1, 1966, should be "cancelled without prejudice", the parties intended that their rights and obligations under the contract should be unaffected by the termination of the defendant's services on October 2, 1968.

In addition to ruling upon requests for findings and rulings submitted by the parties, the trial court found and ruled as follows:

"It is found that in cancelling the contract of May 1st, the parties intended to cancel all rights and obligations of both parties, past, present and future, arising out of the contract, including rights and obligations relative to any breaches of the contract; also, that in cancelling it 'without prejudice' they intended that the cancellation itself should not give rise to any liability; and it is further found that they intended that there would be a settlement between the parties relative to work done and materials furnished by the defendant prior to cancellation, and that this would be on a cost basis. In such a settlement, the defendant is entitled to be credited with the cost of work done and materials furnished, and the plaintiff is entitled to a credit for payments made, and for the cost of rectifying any defective work and/or materials."

In finding and ruling that the parties intended to cancel all rights and obligations arising out of any breaches of the subcontract, the trial court in response to a request by the defendant also found and ruled as follows: "Nalews is an experienced contracting firm and would not voluntarily default on its contract resulting in the work being performed at cost-plus, with excess cost being assessed against it."

The problems presented by an agreement to cancel or rescind a contract after part performance have been outlined by Professor Corbin in his treatise on contracts. In 5A A.

Corbin, Contracts §1229, at 508 (1964), under the heading of "'Discharge', 'Termination' and 'Cancellation'", this comment is made: "[I]t is a common supposition that when a 'contract' is said to be . . . cancelled, all of those legal relations cease to exist, the rights and duties of both parties alike being ended." However, under the heading "Discharge by Rescission", §1236 points out at pages 535-38 the questions which arise where rescission is agreed upon after part performance or a breach: "Is any compensation to be made for a part performance rendered? Does the agreement discharge all right to compensatory damages for a breach that has already been committed? . . . Does the rescission operate only in futuro, making the contract inoperative as to matters yet unperformed, but leaving it still operative as to performances fully or defectively rendered under it?" We think the conclusion therein stated is applicable to the circumstances of this case: "The answers to such questions as these can be made only after interpretation of the terms of the agreement of rescission [or cancellation], and in the light of the circumstances that surrounded its making." 5A A. Corbin, *supra* §1236, at 538.

On its face and without the aid of extrinsic evidence, the agreement of the parties that the subcontract should be "cancelled" might seem without ambiguity to mean that their rights and duties under the contract should be terminated. However, other provisions of the cancellation agreement indicated that the intention was otherwise with respect to specific past performance. The use of the words "without prejudice" served to heighten the ambiguity. To a legal mind this expression might suggest that rights arising out of the subcontract were to remain unaffected by termination of performance. But it could well mean something different to the laymen who drafted and executed the agreement without benefit of legal advice. In this situation, the evidence of the circumstances surrounding integration of the agreement was properly received. *Berke Company v. Bridge Company*, 98 N.H. 261, 264-65, 98 A.2d 150, 152-53 (1953).

In the interpretation of a contract the findings of the trial court based upon evidence of the surrounding circumstances

are findings of fact which are binding in this court if supported by the evidence. Restatement (Second) of Contracts §238 (2) (Tent. Drafts Nos. 1-7, rev. & ed. 1973); *see Rivier College v. St. Paul Fire Ins. Co.*, 104 N.H. 398, 402, 187 A.2d 799, 802-03 (1963). Thus in *Pettee v. Chapter*, 86 N.H. 419, 425, 170 A. 1, 4 (1934), after adverting to the statement by *Doe*, C. J., in *Brown v. Bartlett*, 58 N.H. 511 (1879), that "the question of intention is ordinarily determined as a question of fact, by the natural weight of competent evidence, . . . .", this court said: "Undoubtedly the question of intention is for the court. It is equally true that all evidence tending to show material circumstances is admissible in the attempt to establish their existence. But the ascertainment of their existence is clearly and appropriately a function of the court to which the determination of issues of fact is generally committed." *Pettee v. Chapter, supra* at 428, 170 A. at 5.

The cancellation agreement was entered into in some haste, on the verge of a meeting with representatives of the town and the paper company and their engineers for the purpose of determining what should be done to assure completion of the project by the date fixed by the various contracts between the interested parties. Copeland Process and Nalews both were under the gun, and Copeland pointed out to Swett that the companies which they represented were both in danger of being discharged, with ensuing damage to their professional standing. The subcontract provided in terms that Copeland could terminate the contract on ten days' notice, for violation of its terms by Nalews, and that Copeland Process could complete the work at Nalews' expense. Copeland assured Swett that he did not wish to injure Nalews' standing by following such a course. He therefore proposed that the parties terminate their relationship by agreement, so that he might satisfy the forthcoming meeting that completion of the project would be expedited. In the brief course of negotiations Swett offered little comment concerning proposed terms, except to express concern over payment for work already performed and materials on hand. Thus the agreement also concerned itself with these considerations.

The question of who would be responsible for the comple-

tion of the contract was not discussed in terms of liability for the cost, nor did the cancellation agreement advert to this. Copeland's expression of a purpose not to harm Nalews, coupled with his phraseology of cancellation "without prejudice", could reasonably be found to have given Swett to understand that Nalews would be under no responsibility or liability for the cost of completion; and Copeland could reasonably be found to have had reason to know both that Swett so understood, and that Swett acted in reliance upon that understanding. In such case, it is fundamental contract law that Copeland Process would be bound by Swett's understanding. Restatement of Contracts §§ 231, 233b (1932); Restatement (Second) of Contracts § 227 (Tent. Drafts Nos. 1-7, rev. & ed. 1973); 3 A. Corbin, Contracts § 539 (1960); *see* Corbin, *Parol Evidence,* 50 Cornell L.Q. 161, 190 (1964).

Since the findings and rulings of the trial court are supported by both the law and the evidence, its decree for the defendant on the issue submitted by stipulation of the parties is sustained. *O'Donnell v. Cray,* 109 N.H. 223, 248 A.2d 83 (1968); *Berke Company v. Bridge Company,* 98 N.H. 261, 98 A.2d 150 (1953).

*Remanded.*