Rockingham
No. 6941

SPECTRUM ENTERPRISES, INC.

v.

THE HELM CORP.

November 29, 1974

*Michael & Richardson* and *Franklin C. Jones (Mr. Jones* orally) for the plaintiff.

*Shaines, Madrigan & McEachern (Mr. Robert A. Shaines* orally) for the defendant.

KENISON, C.J. Plaintiff initiated suit in the District Court of Portsmouth to evict the defendant pursuant to RSA ch. 540. Alleging that its remedy at law was inadequate, plaintiff then commenced this action in superior court for a temporary mandatory injunction directing defendant to vacate the premises pending the outcome of the suit at law. Plaintiff alternatively sought a determination that defendant had violated an agreement with plaintiff and that it should be ordered

to vacate pursuant to the agreement or be compelled to comply with its terms.

Trial by a Master *(Leonard C. Hardwick,* Esq.) resulted in a denial of plaintiff's petition for a temporary injunction and in a finding that defendant had not violated the agreement. The master made certain other findings and rulings in adjusting the relationship between the parties. Defendant objected to that portion of the master's report defining the respective areas of operations of the parties and its exceptions to the denial of its motions requesting the trial court to amend the findings and rulings of the master were reserved and transferred by *Morris,* J. This appeal raises the question of whether the master's determination that defendant was not entitled to use the basement area of plaintiff's building was sufficiently supported by the record and by the relevant law.

Plaintiff owns a Holiday Inn motel and restaurant located in Portsmouth, N.H. By a contract entered into on June 19, 1969, defendant agreed to operate "the food and beverage operation located on the first floor of the Holiday Inn . . ., together with all convention and meeting rooms located on the demised premises, except those located in the basement." Subsequently, defendant experienced difficulty in obtaining a liquor license due to the State liquor commission's objections that the agreement appeared to be a lease. Accordingly, the initial agreement was modified in December 1970, to eliminate the word "demise" and was denominated a "management contract". However, this new agreement which was antedated to June 19, 1969, also altered the phraseology of the original agreement so that by its terms defendant agreed to operate "the food and beverage operation at the Holiday Inn . . ., together with all convention and meeting rooms located therein on the premises." No exclusion of the basement area was specified. In return for the use of the facilities defendant agreed to pay plaintiff not less than $45,000 for the first year, at least $55,000 for the second year and not less than $65,000 for the third year.

Whether or not the basement was included within the area in which defendant was entitled to operate its food and beverage business under the management contract is the crucial point of contention between the parties. Since the amount

to be paid by defendant to plaintiff each year was based on the area available for defendant's operations, the determination of whether the basement area was included lies at the heart of the agreement. The master found that the basement area was not included in the area of use to which defendant was entitled under the terms of the agreement. In so finding, he held that with respect to the basement the parties entered into an entirely separate agreement according to the terms of which plaintiff would be paid a certain percentage of income from defendant's use of the basement area. If defendant did not utilize the area and, therefore, derived no income from it, it would not be obliged to make any payment to plaintiff.

Defendant maintains that on the basis of the revised "management contract" the basement area was included within its area of operation and that since plaintiff deprived defendant of a portion of the area, defendant deserves a proportionate reduction in rent paid. Plaintiff argues that the testimony of the parties' accountants and the behavior of defendant establishes the existence of a separate agreement with regard to the basement.

In its argument to overturn the determination of the master, defendant contends that the plain meaning of the language in the management contract controls, and that, therefore, the master's reliance on extrinsic evidence to interpret the wording of the agreement was impermissible. According to defendant the language of the management contract referring to "all convention and meeting rooms" is unequivocal in its inclusion of the basement area within defendant's area of operation. As defendant correctly points out, the so-called "plain meaning" rule governing the interpretation of contracts compels a court to exclude that which would contradict the plain meaning of terms once that meaning has been ascertained. But, if the contract is ambiguous on its face, extrinsic evidence is admissible. 3 A. Corbin, Contracts § 542 (1960); Patterson, *The Interpretation and Construction of Contracts,* 64 Colum. L. Rev. 833, 838 (1964).

The plain meaning rule as a guide for interpreting contracts, however, has been questioned on several grounds. The rule itself has been characterized as a last resort for

a court that has failed to discover any other aid in interpreting the contract. In light of the inherently ambiguous nature of words themselves, the ascertainment of a plain meaning may be at best an elusive goal. 3 A. Corbin, Contracts § 535 (1960); 9 J. Wigmore, Evidence § 2470, at 227 (1940); 4 S. Williston, Contracts § 609A (1961); *see* Chafee, *The Disorderly Conduct of Words,* 41 Colum. L. Rev. 381 (1941); *Town v. Eisner,* 245 U.S. 418, 425 (1917). Even those courts that continue to recognize the rule allow an exception to admit information regarding relevant circumstances. The recognition of this exception no doubt stems from the realization that circumstances surrounding a contract play an essential part in facilitating its proper interpretation. Patterson, *supra* at 843; 3 A. Corbin, Contracts § 536 (1960); Restatement (Second) of Contracts § 228 (1), comment *b* (Tent. Draft No. 5, 1970); Restatement of Contracts § 235 (d), (e) (1936).

In this State how the parties acted with regard to the contract is considered as part of the relevant circumstances and, thus, the master correctly referred to the conduct of the parties in interpreting the disputed language in the management contract. *Guy v. Hanley,* 111 N.H. 73, 75, 276 A.2d 1, 3 (1971); *Grayson v. LaBranche,* 107 N.H. 504, 505-06, 225 A.2d 922, 923 (1967); *Bogosian v. Fine,* 99 N.H. 340, 342, 111 A.2d 190, 192 (1955). The actions of the parties subsequent to the management contract substantiated the existence of a separate agreement covering the basement area. Defendant submitted to plaintiff detailed accountings for the period from June 19, 1969, through June 30, 1970, which specified what income defendant received from the use of the basement area. According to a percentage formula which defendant itself devised, it calculated that plaintiff was entitled to about $3,000 from the income. Based on these calculations the master could find that the basement area was the subject of a separate agreement between the parties.

Defendant alternatively argues that if extrinsic evidence is permitted to interpret the language of the management contract, the weight of the evidence is contrary to the master's finding of a separate agreement. To support this contention defendant points out that the basement facilities did not exist at the time of the original contract on June 19, 1969. By

the time the management contract was made in December, however, the basement facilities had been installed and, therefore, that contract was entered into with the basement area in mind. Defendant also refers to the fact that it made substantial expenditures to furnish the basement area and that such outlays would be inconsistent with the idea that the basement was not included within its area of operation. Defendant further points to testimony of its accountant to the effect that plaintiff billed defendant for gas and electricity for the basement as well as the first floor.

While these facts are evidence that the basement may have been included within defendant's area of operation according to the terms of the management contract, they are not decisive. The fact that defendant made separate payments to plaintiff for use of the basement is strong evidence that a separate agreement was made. Where there is a conflict in the evidence such as here the trier of fact's determination controls unless it is clearly erroneous. *New England Tel. & Tel. Co. v. Mitchell,* 114 N.H. 478, 480, 322 A.2d 613, 615 (1974); *Copeland Process Corp. v. Nalews, Inc.,* 113 N.H. 612, 312 A.2d 576 (1973); *Sutton Mut. Cas. Co. v. O'Brien,* 108 N.H. 325, 328, 234 A.2d 528, 530 (1967); *Hardware Mut. Cas. Co. v. Hopkins,* 106 N.H. 412, 417, 213 A.2d 692, 695-96 (1965).

*Defendant's exceptions overruled.*

All concurred.