## AROOSTOOK VALLEY RAILROAD COMPANY

v.

## BANGOR & AROOSTOOK RAILROAD COMPANY.

Supreme Judicial Court of Maine.

Argued Jan. 6, 1983.

Decided Feb. 2, 1983.

Linda Smith Dyer (orally), Augusta, for plaintiff.

Mitchell & Stearns, John W. Ballou (orally), Bangor, for defendant.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, VIOLETTE and WATHEN, JJ.

WATHEN, Justice.

In this action for breach of contract, plaintiff Aroostook Valley Railroad Company (AVR) appeals from an order of the Superior Court (Aroostook County) granting defendant Bangor & Aroostook Railroad Company's (B & A) Motion to Dismiss and Motion for Summary Judgment.[1] Because we agree that there was no genuine issue of fact and that the defendant was entitled to judgment as a matter of law, we affirm the judgment of the Superior Court.

### I. Background.

On December 18, 1962, AVR and B&A entered into an operating agreement for

---

1. As required by M.R.Civ.P. 12(b), the Motion to Dismiss was also treated as one for Summary Judgment.

the servicing of carload traffic originating or terminating at Skyway Industrial Park in Presque Isle. That agreement was amended on September 1, 1972, December 8, 1975 and October 26, 1977 by supplemental written agreements.[2] Pursuant to the original agreement, AVR agreed to perform certain services for B&A as its agent with regard to the operation of trains and the handling of traffic. B&A, in turn, agreed to pay AVR the sums stated in the original and supplemental agreements as compensation to AVR for its services.

It appears from the pleadings in this case that on February 20, 1981, B&A notified AVR of its intention to terminate the agreement, said termination to become effective on April 24, 1981. On April 2, 1981, B&A rescinded that notice of termination. AVR, however, did not accept the recission. Rather, AVR filed an action for Declaratory Judgment in Superior Court seeking a declaration that the operating agreement terminated as of April 24, 1981, and a declaration that B&A still owed AVR certain duties under the agreement. In September 1981, that action was dismissed by stipulation pursuant to M.R.Civ.P. 41(a). At that time, the parties entered into a formal Memorandum of Agreement to memorialize the fact that the original operating agreement had terminated as of April 24, 1981.

Subsequently, on March 2, 1982, AVR brought the present action, alleging a breach of contract by defendant B&A. AVR maintained that prior to termination, its costs of providing services to B&A exceeded the compensation paid to it pursuant to the agreement, and that it only continued to provide service to B&A on the understanding that increases in compensation

would be negotiated and applied retroactively. It was and is AVR's position that paragraph 11 of the original agreement between the parties required B&A to "protect the interests of Appellant within the object and intent of the agreement and to obviate any injustice or difficulty which may have been caused Appellant by the operation of the agreement."[3] The Superior Court rejected this argument, and granted summary judgment for the defendant.

## II. Discussion

■ At the outset, we must note our disapproval of the fact that the Motion for Summary Judgment in this case merely parroted the language of M.R.Civ.P. 56. Neither the motion nor the Superior Court order provides us with any guidance in understanding the legal basis upon which the judgment rests. Again, we urge counsel moving for summary judgment to articulate the legal issues upon which they rely. *See Eich v. Gellerson*, 441 A.2d 315, 317 (Me.1982). Upon examination of the applicable pleadings, affidavits and memoranda of law, however, it is apparent that B&A, in moving for summary judgment, relied upon two distinct theories: (1) the operating contract between AVR and B&A was mutually rescinded pursuant to the September 1981 termination agreement, thereby precluding any claim or action against B&A for breach of the contract; and (2) under the express terms of the operating contract, B&A had no contractual obligation to agree to any adjustment of the level of compensation to be paid to AVR for services provided.

■ As a general rule, where a contract has been rescinded by mutual consent, the parties are restored to their original rights with reference to the subject matter of the contract, and no action for a breach of the contract can be maintained thereafter.

**2.** The amended agreements were to increase AVR's rate of compensation. The first such increase, in 1972, was applied only prospectively. In 1975 and 1977, the increases were made to apply retroactively.

**3.** Paragraph 11 provides:
Should it be found in practice after at least one year that cases or events which may arise or happen have not been provided for in

this agreement or that any right or interest of either party has not been fully protected or provided for by this agreement in accordance with its object and intent, then the parties hereto may negotiate new or other clauses to meet such new case or event in an equitable manner or to obviate any injustice or difficulty which may be caused to either party.

*See, e.g., Watts Construction Company v. Cullman County,* 382 So.2d 520, 522 (Ala. 1980); *Copeland Process Corp. v. Nawlews, Inc.,* 113 N.H. 612, 614–15, 312 A.2d 576, 578 (1973); *Gordon v. Indusco Management Corp.,* 164 Conn. 262, 265–68, 320 A.2d 811, 815 (1973). On appeal, AVR contends that the 1981 "agreement to terminate" is distinguishable from a "mutual recission", thereby avoiding the preclusive effect of that rule. We need not decide, however, whether the 1981 agreement is distinguishable from a mutual recission, because even if AVR's rights under the contract remained intact, there was no breach.

■ It is well established that the construction of an unambiguous written contract is a question of law for the court, and unambiguous language in the contract must be given its plain and generally accepted meaning. *See, e.g., Soper v. St. Regis Paper Co.,* 411 A.2d 1004, 1006 (Me.1980); *Century Homes, Inc. v. Plaisted,* 412 A.2d 389, 391 (Me.1980). Moreover, courts should not re-write contracts, particularly commercial agreements between two corporations of equal bargaining strength. *Lincoln Pulp and Paper Co., Inc. v. Dravo Corporation,* 436 F.Supp. 262, 269 (D.Me.1977).

■ In the present case, the provisions of the contested operating agreement were clear and unambiguous. The terms of paragraph 11 simply stated that "the parties *may* negotiate new or other clauses." (Emphasis added.) The fact that the parties had in the past successfully renegotiated the rates of compensation does not alone compel continued periodic adjustments. The word "may" in the context of a written contract, will generally be construed to be permissive and discretionary, not mandatory. *Cf. Boynton v. Adams,* 331 A.2d 370, 372 (Me.1975) (interpretation of statutes); *but cf. Schwanda v. Bonney,* 418 A.2d 163, 167 (Me.1980) ("may" will be read as "shall" when used in a statute which imposes a

public duty upon public officials). The absence of an obligation is further evidenced by paragraph 12 of the original operating agreement[4] which gave either party the option to terminate the agreement at any time with sixty days notice. AVR, however, chose not to terminate, and continued to provide services to B&A.

■ Plaintiff claims, however, that the 1962 agreement must be read and interpreted in the context of the various subsequent agreements entered into between AVR and B&A, which had raised the levels of compensation provided to AVR for its services. In essence, plaintiff argues that the "course of dealings" between the two railroads superimposed upon paragraph 11 an implied contractual obligation to renegotiate the original agreement. This argument must be rejected. When two parties have agreed upon specific and unambiguous terms of compensation for specified services by means of an express contract, as in the present case, the law should be most hesitant to imply a second contract, which covers the same subject matter, if the evidence does not compel an inference that the parties intended to make one. 3 *Corbin on Contracts* § 564 (1960); *see also, e.g., Zarum v. Brass Mill Materials Corp.,* 334 Mass. 81, 85, 134 N.E.2d 141, 143 (1956); *but compare Bourisk v. Amalfitano,* 379 A.2d 149, 151 (Me.1977) (summary judgment inappropriate, despite express contractual provisions, given remaining ambiguities as to the scope of parties' contractual obligation). This case does not generate a material issue of fact in this regard.

The entry is:

Judgment affirmed.

---

4. Paragraph 12 provided:

This agreement shall remain in force for a period of one year from the date of its execution by both parties hereto, and thereafter from year to year subject to notification of termination by either party upon sixty days' prior notice in writing given to the other party, such notice to be served either personally or by mailing it, postage prepaid and registered, to the Secretary of Bangor or to the Secretary of Aroostook.