**Robert J. VALLEE, et al., Plaintiffs,**

v.

**Ronald Raymond LACHAPELLE and Fechtor, Detwiler & Co., Inc., Defendants.**

**Civ. A. No. 88–0292–P.**

United States District Court, D. Maine.

Dec. 1, 1989.

Elliott L. Epstein, Arthur J. Reif, Isaac & Raymond, Lewiston, Me., for plaintiffs.

Gerald F. Rath, Bingham, Dana & Gould, Boston, Mass., Peter L. Murray, Murray, Plumb & Murray, Portland, Me., for defendants.

MEMORANDUM AND ORDER GRANTING DEFENDANTS' MOTION AND DENYING PLAINTIFFS' MOTION TO ENFORCE ARBITRATION AGREEMENT

GENE CARTER, Chief Judge.

In this action Plaintiffs are suing Defendants for various alleged violations of the securities laws and other alleged malfeasance concerning their securities brokerage accounts. On January 5, 1989, upon the joint motion of the parties, the Court stayed the action pending arbitration. The parties have now filed cross-motions for enforcement of the arbitration agreement.

Each of plaintiffs' brokerage account agreements, which were submitted in support of the joint application for stay pending arbitration, contain an arbitration clause. The three most recent agreements, executed in March 1987 by Robert Vallee, James and Diane Labonte, and Richard and Angelina Vallee, provide:

> [A]ll other disputes or controversies between us arising out of your business or this agreement, shall be submitted to arbitration conducted pursuant to the code of arbitration procedures of the National Association of Securities Dealers, Inc. as the undersigned may elect. Arbitration must be commenced by service upon the other of a written demand for arbitration or a written notice of intention to arbitrate, therein electing the arbitration tribunal.

Two other contracts, executed by Robert Vallee in 1978 and 1979, are apparently[1]

---

**1.** It is not necessary for the Court to resolve the issue whether the agreements signed by Vallee are for separate accounts or whether the more recent one supersedes those from the 1970s be- cause of the Court's finding that a new written agreement to arbitrate before the NASD was formed by the correspondence of counsel.

for separate accounts, and have arbitration clauses which provide:

> Any controversy between you and the undersigned arising out of or relating to this contract or the breach thereof, shall be settled by arbitration, in accordance with the rules, then obtaining, of either the Arbitration Committee of the Chamber of Commerce of the State of New York, or the American Arbitration Association, or the Board of Arbitration of the New York Stock Exchange, as the undersigned may elect.

Plaintiffs filed their complaint in this Court on October 17, 1988. On November 7, 1988, Defendants, by letter of counsel, Gerald Rath, filed a formal demand for arbitration before the NASD [National Association of Securities Dealers]. Plaintiffs' counsel, Elliott Epstein, responded by letter of November 15, 1988, "memorializ[ing] our telephone conversation of November 10." Epstein's letter specifically states: *"We have agreed to the following regarding arbitration* and discovery in this case. 1. The pending Federal District Court action will be stayed and *all of Plaintiff's claims will be referred to arbitration before the NASD."* (Emphasis added). Epstein's letter asked for written confirmation of the agreement, and Rath responded by letter of November 18, 1988, stating as to point 1: "Agreed." The remainder of the letter agreed generally with most of the other points and reflected a different understanding regarding depositions. In response to Rath's request for confirmation, Epstein, in a letter of November 28, 1988, stated: "I am in agreement with your clarifications of our agreement.... Let's move this arbitration forward as quickly as possible." By letter of December 19, 1988, Epstein presented the motion and proposed order for stay to Rath for approval. While neither the motion nor the proposed order

mentioned the forum in which arbitration was to take place, the letter of transmittal to Rath stated: "I am in the process of preparing a Statement of Claim and Submission Agreement for NASD Arbitration."

In May, 1989, after the stay of proceedings had been granted, Epstein again wrote to Rath, stating:

> Although I earlier indicated I would go through NASD arbitration, my clients have since become skittish about that forum and have instructed me to proceed through AAA. At the outset you indicated you did not particularly care which arbitration service we utilized and I hope this will not create a problem for you.

All plaintiffs filed a statement of claim before the American Arbitration Association, and defendants objected. The American Arbitration Association agreed to hear the claim of Plaintiff Robert Vallee and declined to proceed with the claims of the other Plaintiffs. Now Defendants seek to enforce Plaintiff Robert Vallee's agreement to arbitrate before NASD, and Plaintiffs ask the Court to enforce their election to arbitrate before the American Arbitration Association.

Section 4 of Title 9, United States Code, provides in pertinent part that a party aggrieved by the failure of the other party to arbitrate may petition the district court for an order directing that the arbitration proceed in the manner provided for in the arbitration agreement. The court must order such arbitration after determining that the making of the arbitration agreement is not in issue.

The submissions of the parties here make clear that there is indeed an agreement to arbitrate before NASD that was formed by the correspondence between counsel. No matter what the prior agreement had been,[2] after the filing of the

**2.** Defendants argue that Robert Vallee's 1987 securities contract with the brokerage firm superseded the ones he had signed in 1978 and 1979 and that he had thus agreed to arbitrate all disputes before NASD. Plaintiffs argue that, as to Robert Vallee, the earlier contracts providing for arbitration in accordance with the rules of the Arbitration Committee of the Chamber of

Commerce of the State of New York, the American Arbitration Association, or the Board of Arbitration of the New York Stock Exchange, controlled the account about which many of the allegations of wrongdoing are made and that they were not superseded. Plaintiffs also argue that the language of the more recent contract is ambiguous and should be construed against the

complaint in this case, counsel clearly discussed, then confirmed in writing a bargained-for agreement to arbitrate before the NASD. Parties may vary arbitration agreements by subsequent written documents, *Kanmak Mills, Inc. v. Society Brand Hat Co.*, 134 F.Supp. 263, 268 (E.D. Mo.1955), and plainly they did so here.

Plaintiffs' counsel tries to characterize the exchange of letters as "little more than a continuing disagreement about the terms under which a joint application for a stay might proceed ... culminat[ing] not in a new agreement to arbitrate but in a joint application for a stay." This argument is disingenuous, however. Plaintiffs' counsel's first letter states explicitly that it is memorializing a prior telephone conversation and that "[w]e have agreed" that all claims will be referred to arbitration before the NASD. That letter also recited a waiver of the statute of limitations agreed to by Defendants and specifically asked Defendants' counsel to sign the letter, signifying his agreement. Defendants' counsel's response expressly agreed to the arbitration before NASD and the waiver and clarified the waiver discussion and some other points concerning discovery. That letter again asked for confirmation of agreement, which was provided by Plaintiffs' counsel's letter of November 28, 1988: "I am in agreement with your clarifications of our agreement ... Let's move this arbitration forward as quickly as possible."

Plaintiffs' counsel's affidavit tries to cast the agreement in doubt by averring that the arbitration forum was not a material term of the agreement,[3] that his suggestion of NASD was only for Defendants' counsel's information and that it did not

constitute part of the bargained-for exchange. There is, however, no ambiguity in the arbitration agreement formed by the letters to justify a finding that the Court should look elsewhere to ascertain the intent of the parties. *See Unionmutual Stock Life Insurance Co. v. Beneficial Life Insurance Co.*, 774 F.2d 524, 529 (1st Cir.1985). As the Court of Appeals noted in *Unionmutual*, "Maine contract law provides that ... 'unambiguous language in the contract must be given its plain and generally accepted meaning.'" *Id.* (*quoting Aroostook Valley Railroad Co. v. Bangor & Aroostook Railroad Co.*, 455 A.2d 431, 433 (Me.1983). In this case the contract language formed by the letters unambiguously calls for arbitration to be held before the NASD. *See id.*

Finally, Plaintiffs argue that no valid agreement to arbitrate before NASD can be formed by the letters because the correspondence by which it is now sought to bind the parties was carried out not by them but by their attorneys. There is no requirement that arbitration agreements must be signed by the party to be charged in order to be enforceable under the Federal Arbitration Act. *Hartford Financial Systems, Inc. v. Florida Software Services, Inc.*, 550 F.Supp. 1079, 1086 (D.C.Me. 1982); *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840 (2d Cir.1987). It is also plain that Attorney Epstein was Plaintiffs' agent when he negotiated the forum in which arbitration would be conducted. *See Restatement (Second) of the Law of Agency* § 1, Comment e. The record contains no allegation or even suggestion that Attorney Epstein acted without authority in agreeing to arbitration before the NASD.[4]

draftsman, Defendant Fechtor, Detwiler, to provide that Plaintiff may choose the arbitration forum. The Court need not resolve any of these questions because it is clear that a new agreement for arbitration before NASD was reached in counsel's correspondence after the filing of the complaint in this action.

3. Even if it were to consider the parol evidence submitted by Plaintiffs, the Court finds fatuous Plaintiffs' suggestion that the failure of the Joint Application for a Stay to mention a specific forum is evidence of the immateriality of the tribunal. The letter transmitting the Joint Ap-

plication to Defendants' counsel for approval stated specifically that Plaintiffs' counsel was in the process of preparing a submission agreement for NASD arbitration. Defendants' counsel had no reason to limit the Court's stay order since Plaintiffs had agreed to NASD arbitration from the outset and then represented that they were pursuing it.

4. In fact, the record reflects that a copy of Epstein's November 15 letter, setting forth the contours of the agreement, was sent to Plaintiff Robert Vallee.

Rather, it shows that after the fact, Plaintiffs changed their minds about the forum. Epstein's May 3, 1989, letter to Rath states: "Although I earlier indicated I would go through NASD arbitration, my clients have *since* become skittish about that forum and have instructed me to proceed through AAA." (Emphasis added). Similarly, Epstein's affidavit states that his clients contacted him in April, 1989, "and indicated that they preferred to arbitrate before the American Arbitration Association."

Even if Plaintiffs had not specifically authorized Attorney Epstein to arrange for arbitration before the NASD, he clearly had authority to bind his clients as to matters of procedure, including the choice of arbitral forum. *See Blanton v. Womancare, Inc.*, 38 Cal.3d 396, 212 Cal.Rptr. 151, 696 P.2d 645 (1985). While an attorney clothed only with the authority rising from his employment in that capacity cannot bind his client by any act which amounts to a surrender of any substantial right, *Pomeroy v. Prescott*, 106 Me. 401, 407, 76 A. 898 (1910), *see also, Perkins v. Philbrick*, 443 A.2d 73, 74 (Me.1982), it is plain that Plaintiffs here do not object to Attorney Epstein's substantive decision to agree to resolution of the disputes through arbitration rather than to proceed in court. In fact, in their Memorandum in Opposition to Defendants' Motion to Enforce and in Support of Plaintiffs' Motion to Enforce, Plaintiffs expressly state that they still wish to pursue arbitration. *Id.* at 6. The Court, therefore, finds no reason that Plaintiffs should not be bound by the agreement to arbitrate before NASD made by their attorney.

Accordingly, it is ORDERED that Defendants' Motion to Enforce Arbitration Agreement is hereby GRANTED, and Plaintiff Robert Vallee is hereby ORDERED to pursue arbitration proceedings, if at all, in the NASD. It is FURTHER ORDERED that Plaintiffs' Motion to Enforce Arbitration Agreements or, in the Alternative, Plaintiffs' Application for a Court–Designated Arbitrator, be and it is hereby DENIED.

SO ORDERED.