Grafton
No. 90-438

RICHARD C. REINHOLD AND SANDRA B. REINHOLD
*d/b/a* REINHOLD ASSOCIATES

v.

JOHN MALLERY

November 7, 1991

*Moulton, Samaha, Vaughan & Foley P.A.*, of Littleton (*Timothy J. Vaughan* on the brief, and *Robert J. Foley* orally), for the plaintiffs.

*Stebbins, Bradley, Wood & Harvey P.A.*, of Hanover (*David H. Bradley* on the brief and orally), for the defendant.

BROCK, C.J.   The defendant, John Mallery, appeals from the Superior Court's (*Dickson*, J.) order requiring the defendant to pay a real estate commission to the plaintiff, Reinhold Associates (Reinhold). As he did before the trial court, the defendant argues on appeal that Reinhold, as the defendant's real estate agent, breached its fiduciary duty to him, thus foreclosing any claim by Reinhold for its commission. We agree, and therefore reverse the trial court's order.

On July 18, 1986, the defendant entered into a listing agreement with Reinhold, a fully licensed real estate brokerage firm, wherein Reinhold received an exclusive right to secure a buyer for approximately 165 acres of undeveloped property in Franconia owned by the defendant. Pursuant to this agreement, Reinhold could sell the property for $3,179 per acre "or at any other price and terms accept-

able to [the defendant]." Upon finding a purchaser for the property, Reinhold would be entitled to a commission equal to seven percent of the sales price of the property.

Jere Peabody was the broker for Reinhold Associates who worked with the defendant on the listing agreement and on finding a buyer for the property. At the time the listing agreement was executed, Peabody, with members of his family, owned approximately 225 acres of land in Franconia, a part of which was adjacent to the defendant's property. The Peabody property was not for sale at that time, and Peabody did not inform the defendant about owning an adjacent parcel when the parties entered into the listing agreement. The Peabody property had road access to Route 116, and Peabody had previously obtained subdivision approval for a portion of the property.

Over the course of several months, Peabody spoke with several prospective buyers about the defendant's property, but the only offer made was rejected as being too low. In early April 1987, Peabody attended a meeting concerning, in part, the possible sale of the defendant's property. One of the parties at that meeting was Baronet, Inc. (Baronet), represented by its attorney, Robert Crowley. Crowley expressed Baronet's interest in purchasing *both* the defendant's property *and* the Peabody property. As described by Crowley at the bench trial in this matter, Baronet was "interested in trying to put together a land deal in Franconia. . . ." Moreover, Peabody, at trial, also expressed that Baronet's interest in the defendant's property was linked to its ability to also acquire Peabody's property.

On April 14, Peabody, by telephone, presented a verbal offer from Baronet of $475,000 for the defendant's property, which the defendant neither accepted nor rejected. Although there was some dispute at trial over whether, during this call, Peabody also discussed Baronet's interest in the Peabody property, it is clear that any such discussion was brief, with Peabody telling the defendant that he would let the defendant know what transpired with regard to the Peabody property. On April 15, without further discussion with the defendant, Peabody and Baronet entered into an agreement giving Baronet, in effect, an option to purchase the entire 255 acres of the Peabody property for $1,055,000.

On April 16, Peabody left New Hampshire on vacation and did not speak with the defendant again until April 19. Calling from a phone booth in the Blue Ridge Mountains, Peabody told the defendant about signing the agreement with Baronet; however, at trial, Peabody could not recall if during this discussion he told the defendant the price he was receiving for the Peabody property. Peabody did

testify that he and the defendant "talked about the fact that I really felt we could get a full priced offer from [Baronet] . . ." for the defendant's property.

On April 21, Attorney Crowley met with the defendant to discuss Baronet's interest in the defendant's property. Crowley presented the defendant with an uncompleted binder agreement and told the defendant that Baronet would agree to purchase the defendant's property. Although they had discussed a price for the land, there was no price indicated on the binder agreement. The defendant took the document and told Crowley that he wanted his attorney to review it. Also during this meeting, the defendant asked Crowley about Baronet's agreement to buy the Peabody property. The defendant demanded to know how much Peabody was receiving for his property, and indicated that, if Crowley refused to divulge this information, the defendant would refuse to sign the proposed binder agreement. Crowley expressed concern over revealing this information, but the dilemma was resolved when Peabody, still on vacation, happened to interrupt the meeting with a telephone call. Peabody told Crowley that he could release the price information, whereupon, Crowley gave the defendant a copy of the entire Peabody/Baronet binder agreement.

By letter on April 24, Crowley extended an offer on behalf of Baronet to the defendant of $535,000 for his property. Soon thereafter, however, the defendant rejected Baronet's offer and stated that he thought that his property was worth a great deal more than Baronet was offering. On April 29, Crowley relayed this information by phone to Peabody. Peabody returned from his vacation during early May, and, with knowledge of the defendant's rejection of the Baronet offer, nevertheless prepared a purchase and sale agreement for the defendant's property for a price of $527,714. This price reflected the full value of the property indicated by the terms of the listing agreement. The purchase and sale agreement was signed by Crowley, for Baronet, and sent to the defendant on May 6. The defendant never returned the contract and did not communicate with anyone from Reinhold or Baronet until early August, 1987.

From early May until August, several attempts were made by Peabody, Reinhold, and Crowley to contact the defendant, but their attempts were to no avail. Specifically, there were two letters sent to the defendant in June, one from plaintiff Richard Reinhold and another from Crowley, notifying the defendant that Baronet was prepared to close the sale on August 1, 1987. The defendant did not appear for the closing, and the listing agreement with Reinhold ex-

pired by its terms on August 9, 1987. Reinhold later brought this action to recover its commission.

After a two-day bench trial, the court denied the defendant's requested ruling that Reinhold, through its broker, Peabody, had a conflict of interest by virtue of Peabody's interest in selling his own property to Baronet while, at the same time, also trying to sell the defendant's property to the same buyer. The court also denied the requested ruling that Peabody "had a duty to explain to the defendant . . . that the desire of Baronet, Inc. to purchase both the Peabody property and the defendant's property as a package" placed the defendant in a stronger position to negotiate for a higher price. The trial court ruled that Reinhold presented the defendant with a ready, willing, and able buyer and that, hence, the real estate firm was owed its commission under the listing agreement.

■ The defendant argues on appeal that Reinhold's conflict of interest resulted in a breach of its fiduciary duty to the defendant. It has long been established that when an agent acts on behalf of two parties with adverse interests, unless there is proof that the principal knew of and consented to the agent's so acting, the agent is barred from receiving his or her commission. *Benway v. Cole*, 99 N.H. 51, 53, 104 A.2d 734, 735 (1954); *Wilson v. Atwood*, 81 N.H. 61, 63, 122 A. 797, 798 (1923). Such a conflict of interest can exist when an agent acts on his or her own behalf in a transaction in which the agent has a substantial interest and that is also connected with the terms of the agency. *See* 12 AM. JUR. 2d *Brokers* § 86 (1964); RESTATEMENT (SECOND) OF AGENCY § 389 comment *a*, at 205–06. These maxims arise from an agent's obligation, as a fiduciary, to act with undivided loyalty and service to his or her client. *Crowley v. Global Realty, Inc.*, 124 N.H. 814, 819, 474 A.2d 1056, 1059 (1984); RESTATEMENT (SECOND) OF AGENCY § 387.

On appeal, Reinhold argues that the trial court's ruling that no conflict of interest existed between Peabody and the defendant is supported by the evidence presented at trial. We disagree. It is undisputed that Baronet was interested in the defendant's property as part of a package of land which included acquisition of the adjacent Peabody property. This nexus between the two properties created a conflict of interest in Peabody in that he now had a personal interest in the sale of the defendant's property. Reinhold argues that, because the Peabody property was a "separate and different" type of parcel from the defendant's land in that the Peabody property was in the early stages of development, no conflict existed by virtue of Pea-

body's ownership of this property. We agree that such a difference could potentially warrant a different assessment of the value of the two properties by a prospective buyer, such as Baronet, but this does not remove the obvious nexus between the two properties created by Baronet's interest in a "package deal."

Having held that a conflict did exist does not, however, end our inquiry. An agent may proceed on his own behalf without violating any duties to his principal if he or she makes a full disclosure to the principal of "all facts which the agent knows or should know would reasonably affect the principal's judgment. . . ." RESTATEMENT (SECOND) OF AGENCY § 390.

> "Hence, the disclosure must include not only the fact that the agent is acting on his own account . . . , but also all other facts which he should realize have or are likely to have a bearing upon the desirability of the transaction from the viewpoint of the principal. . . .
>
> . . . [T]he agent's duty of fair dealing is satisfied only if he reasonably believes that the principal understands the implications of the transaction."

*Id.* comment *a*, at 209. When the agency involves the sale of real estate, such disclosure includes informing the principal "that the property has become of enhanced value since the time when it was placed in the hands [of the agent]. . . ." 12 AM. JUR. 2d *Brokers* § 89 (1964). Disclosure, alone, does not cure the conflict; the agent must also obtain the principal's consent to allow the agent to act, despite the conflict. *Wilson v. Atwood supra.*

Reinhold maintains that, by telling the defendant about Baronet's option on the Peabody property and by providing a copy of Peabody/Baronet binder agreement, full disclosure was made. This argument is best answered by Peabody's own testimony at trial:

> "Q. Now, would you agree with me, Mr. Peabody, that if some unrelated third party own[ed] the [Peabody] property, . . . and it was in the hands of some other broker and you learned as of April 15, 1987, that it's just been put under option for a [$1,055,000], that would be . . . pretty important information . . . to pass on to your client?
>
> A. That's correct, if I had knowledge of it, yes.
>
> Q. And would you also agree that that probably affects the value of [the defendant's] properties; that fact that adjacent property has just gone under option . . . ?

A. I would say it could, not necessarily.

. . .

Q. . . . Did you ever suggest to [the defendant that] this [put him] in a position of perhaps getting the, better than the listed price?

A. No, I did not."

Clearly, Peabody understood the implications of Baronet's desire to purchase both parcels of land, yet he never discussed these implications with the defendant, his principal.

Even were we to assume that the defendant had full knowledge of the effect of Baronet's offer to Peabody, the defendant's actions on receiving the copy of the Peabody/Baronet binder clearly indicate that he did not consent to his agent's dual capacity. Within a week of obtaining this agreement, the defendant contacted Baronet's attorney, Crowley, and explicitly told him that he would not sell his property to Baronet. Although the defendant failed to discuss with Peabody his concerns about Baronet's interests, there is no merit to the assertion that such a failure indicates the defendant's acquiescence to Peabody's actions.

■ We hold that when Reinhold Associates's employee, Peabody, agreed to sell his property to Baronet, knowing that Baronet's interest in the defendant's property was linked to acquiring the Peabody land, a conflict of interest was created, and that Peabody failed to adequately disclose the implications of his deal with Baronet to the defendant. Having breached its fiduciary duty to the defendant, Reinhold is not entitled to receive its commission and, hence, the trial court's order is reversed. Accordingly, we will not consider the defendant's other argument.

*Reversed.*

BATCHELDER and JOHNSON, JJ., did not sit; the others concurred.