USCA1 Opinion

 

 July 31, 1996 United States Court of Appeals United States Court of Appeals For the First Circuit For the First Circuit ____________________ No. 95-2329 WAINWRIGHT BANK & TRUST COMPANY, Defendant, Appellant, v. GREGORY W. BOULOS, ET AL., Third Party Defendants, Appellees. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW HAMPSHIRE [Hon. Steven J. McAuliffe, U.S. District Judge] ___________________ ____________________ Before Torruella, Chief Judge, ___________ Stahl and Lynch, Circuit Judges. ______________ ____________________ Errata Sheet Errata Sheet The opinion of this Court issued on July 17, 1996, is amended as follows: Page 16, line 8, change second "Boulos" to read "Wainwright" United States Court of Appeals For the First Circuit ____________________ No. 95-2329 WAINWRIGHT BANK & TRUST COMPANY, Defendant, Appellant, v. GREGORY W. BOULOS, ET AL., Third Party Defendants, Appellees. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW HAMPSHIRE [Hon. Steven J. McAuliffe, U.S. District Judge] ___________________ ____________________ Before Torruella, Chief Judge, ___________ Stahl and Lynch, Circuit Judges. ______________ ____________________ Robert M. Shepard with whom Smith-Weiss and Zall, PC was on brief _________________ ________________________ for appellants. Harold J. Friedman with whom Karen Frink Wolf and Friedman & __________________ ________________ __________ Babcock was on brief for appellees. _______ ____________________ July 17, 1996 ____________________ STAHL, Circuit Judge. Appellant Wainwright Bank STAHL, Circuit Judge. _____________ and Trust Co. ("Wainwright") retained appellees Gregory W. Boulos and The Boulos Company (collectively "Boulos")1 as real estate brokers to sell a distressed property. Boulos found a buyer, but the deal fell apart at the closing. The prospective buyer sued Wainwright, who counterclaimed; Wainwright then sued Boulos, who also counterclaimed. During the bench trial, Wainwright and the buyer settled, but Wainwright and Boulos pressed on. Ultimately, the district court denied Wainwright's claims that Boulos breached his duties as a broker, and awarded a $65,460 commission to Boulos. Wainwright appeals, and we affirm. I. I. __ Facts Facts _____ We summarize the facts in the light most favorable to the verdict-winner Boulos, consistent with record support.  Cumpiano v. Banco Santander P.R., 902 F.2d 148, 151 (1st Cir. ________ ____________________ 1994). Wainwright held a first mortgage on two dormitory- style apartment buildings adjacent to the University of New Hampshire in Durham, New Hampshire. The owner of the apartments, after defaulting on the mortgage loan, agreed to allow Wainwright to sell the property in lieu of foreclosure.   ____________________ 1. Because there is no need to distinguish Gregory W. Boulos from The Boulos Company (a corporation), for simplicity we refer to Boulos as an individual. -2- 2 Wainwright retained Boulos, a licensed commercial real estate broker, to market the property. After a number of unsuccessful offers from other potential buyers and a reduction in the asking price, Wainwright accepted a $1.25 million offer from Radhey Khanna, a real estate investor. Wainwright agreed to finance eighty percent of both the $1.25 million purchase price and $250,000 of planned improvements to the property. Khanna subsequently determined, however, that the property's cash flow was less robust than advertised, and he withdrew his offer. Khanna remained interested, though, and made several lower offers that were rejected by Wainwright.  Eventually, Wainwright accepted Khanna's offer of $1.1 million. Boulos, who is not a lawyer, prepared a Purchase and Sale Agreement ("the P&S") dated August 4, 1994, to embody the accepted deal. Boulos included in the P&S certain language provided by Khanna's lawyer. Khanna had earlier learned from Boulos that Wainwright intended to record the sale on its own books at an inflated price, higher than the actual price to which Khanna and Wainwright agreed. The record suggests that Wainwright planned to combine the $1.1 million purchase price and the $250,000 of planned improvements, together comprising Khanna's "total investment," and record the sale at $1.35 million. The improvements, however, were to be completed -3- 3 after Khanna closed the purchase of the apartments. The $250,000 was to be paid to the contractors that completed the improvements, not to the bank, and thus the cost of the planned improvements was in no sense part of the bank's proceeds from the sale. Khanna indicated that he did not care what Wainwright did internally as long as it did not increase his cost of ownership.  Because Khanna's share of the real estate transfer taxes might conceivably be increased if the taxing authorities learned that Wainwright recorded an inflated purchase price, Khanna, through his attorney, had Boulos add this term to the contract: "The transfer tax will be paid equally by the Buyer & Seller except Seller will pay the entire transfer tax on the portion of the sale price above $1,100,000."  Khanna also wanted to allocate a specific portion of the purchase price to the furnishings and other personal property in the apartments, which are depreciated for tax purposes at a faster rate than the building. With that intent, Khanna had Boulos add this term: "Purchase price of the property consists of $250,000 in personal property and the balance in real estate." The deal unraveled at the closing. Although Khanna had been sent draft closing documents, prepared by Wainwright's counsel, that indicated a $1.1 million total -4- 4 purchase price, at the closing Wainwright insisted that the actual price was $1.35 million. Khanna maintained that the deal was for $1.1 million for the entire property "as is," and that the additional $250,000 was for planned improvements and was not part of the purchase price. Wainwright has put forth two rationales for its position that Khanna was to pay $1.35 million. Initially, in a letter to Boulos arguing that no commission was due, Wainwright stated that the purchase price was Khanna's "total investment" of $1.1 million plus $250,000 of planned improvements. Later, Wainwright took the position that the real property was to be sold for $1.1 million and the personal property for $250,000, relying on the two paragraphs added by Khanna (one allocating $250,000 to personal property and "the balance" to real estate; the other making Wainwright pay transfer tax on the portion of the sale price above $1.1 million). The parties were unable to resolve their differences, and this litigation ensued. II. II. ___ Prior Proceedings Prior Proceedings _________________ Khanna filed a petition for specific performance and money damages in New Hampshire state court. Wainwright removed the suit to New Hampshire's federal district court under diversity jurisdiction. Wainwright filed a counterclaim against Khanna, and a third-party complaint against its broker Boulos, alleging negligence, negligent -5- 5 misrepresentation, and breach of contract by Boulos. In turn, Boulos counterclaimed against Wainwright, seeking payment of his commission. The case was tried to the bench. After the close of evidence, Wainwright agreed to pay Khanna $85,000 to settle the claims between them. Boulos and Wainwright continued to press their third-party claims, and after the closing arguments, the court orally made the following findings of fact and rulings of law: the parties intended a $1.1 million sale of the real and personal property, with plans for $250,000 of post-closing improvements; the testimony of Thomas Zocco, Wainwright's senior vice president, was not credible, and he and Wainwright could not have reasonably believed that the price was $1.35 million; the evidence was insufficient to make out any of Wainwright's claims against Boulos; and Boulos had earned his commission by producing a ready, willing, and able buyer. Accordingly, the court awarded Boulos $65,460, representing his six percent commission on the intended purchase price of $1.1 million, with a minor (and undisputed) adjustment.  Wainwright appeals. -6- 6 III. III. ____ Discussion Discussion __________ Wainwright articulates three issues on appeal, all governed by New Hampshire law:  (1) Did Boulos breach his fiduciary duty to his client, Wainwright, by negligently preparing the P&S agreement and by failing to provide a copy of an earlier draft agreement that contained language that might have avoided Wainwright's confusion? (2) Did the district court err in awarding Boulos a full commission? (3) Was the final P&S so vague that there was no valid contract between the parties? We need not address the third "issue" separately;  whatever relevance it has is subsumed in the first two issues. Whether or not there was a valid P&S contract between Khanna (the buyer) and Wainwright (the seller) is only tangentially relevant to this litigation between Boulos (the broker) and Wainwright (the seller). Although Wainwright does not explain exactly why it raises this issue, we see two relevant aspects. First, contract validity reflects on Boulos's performance in preparing the P&S documents; but that is encompassed in Wainwright's arguments on breach of fiduciary duty. Second, the court based its commission award to Boulos on its finding that there was an -7- 7 agreement for the transfer of the property to Khanna at a price of $1.1 million; we will deal with that finding in our discussion of the award to Boulos. A. Breach of Fiduciary Duty ___________________________ We note at the outset that Wainwright's third-party complaint against Boulos did not allege any breach of fiduciary duty, but Boulos apparently has not objected to the gradual transformation (both at trial and on appeal) of Wainwright's negligence claim into a breach of fiduciary duty claim. Thus, we will hear Wainwright's arguments as presented. Wainwright asserts that Boulos breached his fiduciary duty to Wainwright in two ways: first, by negligently preparing the P&S, and, second, by breaching the duty to present all relevant information to Wainwright. We first address the alleged negligent preparation of the P&S. The trial court orally ruled on Wainwright's negligence/breach of fiduciary duty claim against Boulos as follows: I'm not sure what the standard is in terms of a real estate broker who's not a lawyer drafting a contract for the sale of real estate. Technically I'm not sure a real estate broker should be drafting a contract for the sale of real estate.  Certainly not in New Hampshire, I think he shouldn't be. I think that's practicing law without a license. But to the extent Mr. Boulos prepared this contract and the bank hasn't presented evidence regarding the applicable standard of care or evidence suggesting that he didn't meet that standard of -8- 8 care, I'm inclined to not find a breach of any duty. Certainly I don't find a breach of duty of undivided loyalty or breach of the agency relationship by Mr. Boulos. There's no evidence to suggest that he didn't act completely properly.  He provided the bank with all relevant information. I don't think Mr. Zocco [Wainwright's senior vice president] can reasonably claim to have been confused by the proposed sale terms that Mr. Boulos transmitted to him from Mr. Khanna. And while this contract certainly isn't perfect and could certainly be better, it's not inadequate. And its meaning I think is reasonably determined from the contract and the evidence presented. Earlier, in Wainwright's closing argument, the district court asked whether Wainwright needed expert testimony on a broker's standard of care in preparing a P&S agreement and whether Boulos breached it. The court's questioning clearly indicated its belief that expert testimony was required. But Wainwright's attorney replied that the testimony of Boulos -- who had substantial expertise in his field -- was sufficient to establish the standard of care, and that the ambiguous contract documents themselves were sufficient to show a breach of that standard. The court never expressly ruled on whether expert testimony was needed.  On appeal, both parties have assumed that the district court required expert testimony, even though it only stated that "the bank has not presented evidence" on the standard of care or Boulos's breach thereof. The parties -9- 9 exert much effort arguing whether or not an expert was required. We need not decide that issue, however. Viewing the record independently, and assuming for the sake of argument that no expert was needed, we hold that Wainwright nonetheless failed to present sufficient evidence of either the applicable standard of care or that Boulos breached it. Wainwright's burden of proving the standard of care applicable to the allegedly ambiguous P&S, and a breach thereof, is difficult -- perhaps impossible -- given the court's well-supported finding that Wainwright was "planning on accounting for the sale in some manner other than at the face value of the contract." The record does not indicate whether Zocco and Wainwright hoped to confound its regulators or effect some other purpose. It is obvious, though, that Zocco injected a significant element of confusion and duplicity into the transaction. A vague and ambiguous P&S contract would seem to be exactly what Wainwright wanted, giving it the "flexibility" to record an inflated price. The evidence also showed that Boulos probably understood as much.  Moreover, the buyer, Khanna, felt compelled to add language to protect himself from possible tax increases resulting from Wainwright's strategy, and Wainwright points to that same language as a primary source of its purported confusion. Given the context in which Wainwright asked Boulos to work, the factfinder must ask: What is the -10- 10 standard of care when the client wants to play games with the figures? And is facial ambiguity a breach of the standard under such circumstances? Wainwright asked the district court to rely on the testimony of Boulos to establish the standard of care. The only pertinent testimony he provided was this: [Bank's lawyer]: When you agree to act as an agent, do you agree with me that you accept certain responsibilities? [Boulos]: Yes. . . . . [Bank's lawyer]: And you agree that you owe a responsibility to act in a professional manner when marketing the property? [Boulos]: Correct. [Bank's lawyer]: You have a responsibility and obligation to communicate all information that you learn from prospective purchasers back to your client, the seller. . . . . [Bank's lawyer]: When you draw up a purchase agreement on behalf of a seller such as Wainwright, you have a responsibility to do that carefully. [Boulos]: Correct. [Bank's lawyer]: To make sure that the language in there is precise and reflects the agreement of the parties. [Boulos]: That's correct. -11- 11 Thus, all the court heard about the standard of care was that the broker should "communicate all information," "act in a professional manner," draft the agreement "carefully," and provide "precise language" that "reflects the agreement of the parties."  As the district court ruled, that limited testimony is insufficient to establish the applicable standard of care in a complex commercial transaction involving real and personal property, a financing commitment for both the purchase and the post-purchase improvement of the property, and tax consequences that may compel a buyer to allocate the price in a way that is not necessarily reflective of actual economic value. And that testimony is certainly not enough where the seller has indicated its intent to record a sale price greater than the actual consideration. We hold, even assuming that no expert testimony was necessary, that Wainwright failed to establish the standard of care owed by Boulos. Thus, the district court properly denied Wainwright's claim that Boulos negligently prepared the P&S agreement. Not only did Wainwright fail to establish the broker's standard of care in this context, it also failed to present evidence sufficient to allow a reasonable factfinder to conclude that Boulos breached any duty. First, without evidence of the standard of care, there is no basis upon -12- 12 which a factfinder could determine breach. Moreover, we are unpersuaded by the argument that the contract itself indicates a breach of duty. Wainwright apparently argues that the preparation of this contract was per se negligent ___ __ because it was found by the district court to be ambiguous, requiring extrinsic evidence to interpret the parties' intent on a fundamental term, the price. We decline to hold that a broker who prepares a contract that is facially ambiguous about the price is necessarily negligent, especially given the facts and circumstances of this case. Wainwright also claims that Boulos breached his duty to present all relevant information about the transaction, asserting that Boulos should have sent it an earlier proposed contract that was never executed by Khanna because it contained an error in the purchase price.  Specifically, after Wainwright orally accepted Khanna's second, reduced offer of $1.1 million, Boulos drew up a purchase and sale agreement and sent it to Khanna. Boulos testified that this agreement contained a typographic error, indicating a purchase price of $1.35 million, mistakenly reflecting an earlier offer from another prospective purchaser. Because of this mistake, Khanna returned the unexecuted document to Boulos. Wainwright contends that certain handwritten notations made by Khanna's attorney on that unexecuted contract would have alerted Wainwright to -13- 13 Khanna's mistaken view of the deal. The unexecuted contract included a term stating that the purchase price consisted of "$250,000 in personal property." A handwritten notation added to that term the following: "and $850,000 for real estate." This was a clearer allocation than was included in the final P&S at issue, which provided that "the purchase price of the property consists of $250,000 in personal property and the balance in real estate." New Hampshire law imposes a duty on a broker who has a conflict of interest relating to the transaction to make a full disclosure of "`all facts which the agent knows or should know would reasonably affect the principal's judgment.'" Reinhold v. Mallery, 599 A.2d 126, 129 (N.H. ________ _______ 1991) (quoting Restatement (Second) of Agency 390). In ______________________________ this case, there is no allegation whatever that Boulos was acting for his own account or had any other conflict of interest.  The only authority Wainwright presents for its position states that a broker must disclose "all facts which are or may be material to the matter . . . or which might affect the principal's rights and interests or influence his action." 12 Am. Jur. 2d Brokers 89 (1964), cited in _______ ________ Reinhold, 599 A.2d at 129. We assume for the sake of ________ argument that a New Hampshire court would follow that rule even where the broker has no conflict of interest. -14- 14 The trial court expressly, and supportably, found that Boulos "provided Wainwright with all relevant information." We hold that the judge did not clearly err in its fact-bound determination that the unexecuted contract was not relevant. See Juno SRL v. S/V Endeavour, 58 F.3d 1, 4 ___ ________ _____________ (1st Cir. 1995) (explaining that clearly erroneous standard applies to findings of fact, as well as mixed questions of law and fact, unless the latter are based on mistaken impression of applicable legal principles). The district court's finding that Wainwright had intended to sell all the real and personal property for $1.1 million was supported by the evidence. Thus, Wainwright and Khanna were actually in agreement about the intended purchase price, and the unexecuted agreement could not have alerted Wainwright to any problems or confusion. Therefore, we agree with the district court that the unexecuted contract was not relevant to the transaction, in that it would not have influenced Wainwright's actions or affected its judgment.  Accordingly, we affirm the district court's ruling that Wainwright failed to prove negligence or any other breach of fiduciary duty on the part of Boulos. B. The Award of Commission to Boulos ____________________________________ Wainwright makes two arguments in challenging the award of a $65,460 commission to Boulos: (1) Boulos must forfeit his commission because he breached his fiduciary duty -15- 15 to his client, Wainwright; and (2) Boulos is entitled to a commission on the sale of only the real property, and not the personal property included in the sale. We also consider Wainwright's enigmatic argument that there was no valid purchase and sale agreement, and thus (we assume the argument goes), there can be no commission award to Boulos. We have already rejected Wainwright's claim that Boulos breached his fiduciary duty to Wainwright, thus Wainwright's first argument must fail. The second argument also fails, because the district court's finding that Wainwright intended to pay Boulos a commission on the entire sale of both real and personal property is supported by the evidence and is not clearly erroneous. Where a contract is ambiguous on its face, extrinsic evidence is admissible to prove the parties' intent, Spectrum Enterprises, Inc. v.  __________________________ Helm Corp., 329 A.2d 144, 146-47 (N.H. 1974), and the trier __________ of fact's determination controls unless clearly erroneous,  Gel Sys., Inc. v. Hyundai Eng'g & Constr. Co., 902 F.2d 1024, ______________ ___________________________ 1027 (1st Cir. 1990).2 Indeed, the record suggests that,  ____________________ 2. We note that Wainwright could argue, but did not, that the court erroneously considered extrinsic evidence of the parties' intent regarding the commission, when the listing agreement between Wainwright and Boulos unambiguously specified that the commission was payable on the sale of real estate, not personal property. But Wainwright never raised that argument before the district court, and it cannot be raised for the first time on appeal, even if the bank had attempted to do so. See Roche v. John Hancock Mut. Life Ins. ___ _____ ___________________________ Co., 81 F.3d 249, 257 n.6 (1st Cir. 1996) (explaining that ___ arguments may not be raised for the first time on appeal). -16- 16 from the outset, Wainwright intended that Boulos market the entire property, and because the units were operated as college dormitories, the furnishings were an integral part of the property. There is no evidence of any discussion between Boulos and Wainwright about allocating the purchase price between real and personal property, and the evidence indicates that the allocation was made solely by Khanna based on tax concerns.  Finally, Wainwright's argument that there was no valid agreement between Wainwright and Khanna lacks merit.  Wainwright argues that because the written documents were ambiguous, there was no "meeting of the minds" and therefore no valid agreement. From that premise, Wainwright apparently wants us to conclude that Boulos should get no commission, or (somewhat differently) that it is impossible to calculate the correct commission because the parties never agreed on a firm sale price. We reject the premise, however, and therefore need not address the possible conclusions. Wainwright's argument totally ignores the extrinsic evidence that was presented, which supported the court's finding that Wainwright and Khanna had indeed intended a sale for $1.1 million. We see no error -- and certainly no clear error -- in the district court's finding that Wainwright understood and accepted Khanna's offer of $1.1 million. -17- 17 IV. IV. ___ Conclusion Conclusion __________ For the foregoing reasons, the decision of the district court is affirmed. Costs to the appellee. ________ -18- 18