<head>

<title>USCA1 Opinion</title>

<style type="text/css" media="screen, projection, print">

<!--

@import url(/css/dflt_styles.css);

-->

</style>

</head>

<body>

                 UNITED STATES COURT OF APPEALS
                     FOR THE FIRST CIRCUIT
                      ____________________

No. 96-2029

           TOKYO MARINE AND FIRE INSURANCE CO., LTD.,

                     Plaintiff, Appellant,

                               v.

              PEREZ & CIA., DE PUERTO RICO, INC.,

                      Defendant, Appellee.

                      ____________________

No. 96-2030

           TOKYO MARINE AND FIRE INSURANCE CO., LTD.,

                      Plaintiff, Appellee,

                               v.

              PEREZ & CIA., DE PUERTO RICO, INC.,

                     Defendant, Appellant.

                      ____________________

         APPEALS FROM THE UNITED STATES DISTRICT COURT

                FOR THE DISTRICT OF PUERTO RICO

        [Hon. Salvador E. Casellas, U.S. District Judge]

                      ____________________

                             Before

                    Torruella, Chief Judge,

                     Lynch, Circuit Judge,

and DiClerico, Jr., District Judge.
                     _____________________

   Vanessa Viera, with whom Raymond P. Burgos, Rafael Vil-
Carrin and Pinto-Lugo & Rivera were on brief, for appellant.
   Antonio M. Bird, Jr., with whom Bird Bird & Hestres was on
brief, for appellee.

                      ____________________

                        April 21, 1998
                      ____________________

         TORRUELLA, Chief Judge.  Tokyo Marine and Fire Insurance
Co., Ltd. ("Tokyo Marine"), as subrogee to the rights of its
insured, Mitsubishi Motors Sales of the Caribbean, Inc.
("Mitsubishi"), filed this tort suit in diversity against defendant
Prez y Ca. de Puerto Rico, Inc. ("Prez y Ca.") for the damage
caused to vehicles owned by Mitsubishi while they were stored at a
facility owned by Prez y Ca.  After holding a bench trial, the
district court entered judgment finding Prez y Ca. liable to
Tokyo Marine on seven out of the eight counts in the complaint.  
Tokyo Marine and Prez y Ca. now cross-appeal from the judgment of
the district court.  Tokyo Marine contends that the district court
erred in finding that the first count of its complaint was time-
barred, while Prez y Ca. challenges the court's finding of
liability.  Prez y Ca. also appeals from the district court's
decision to award attorneys' fees to Tokyo Marine under P.R. R.
Civ. P. 44.1 as a sanction for what it perceived as Prez y Ca.'s
obstinate conduct in this litigation.  For the reasons explained
below, we affirm in part and reverse in part.
I.  Background
         We recite the facts in the light most favorable to the
judgment.  See Wainwright Bank & Trust Co. v. Boulos, 89 F.3d 17,
18 (1st Cir. 1996).
         This case involves eight shipments of cars owned by
Mitsubishi that were damaged while they were stored at a harbor-
side lot owned by defendant Prez y Ca.  On February 15, 1993, the
M/V ORION HIGHWAY arrived in San Juan, Puerto Rico, and docked at
a berthing facility owned by Prez y Ca.  The ship was carrying
the first shipment of cars at issue in this case, which consisted
of 619 Mitsubishi-brand motor vehicles consigned to Mitsubishi
Motors Sales of the Caribbean, Inc.  The cars were discharged and
stationed on Prez y Ca.'s lot for one week, at the end of which
they were delivered to Mitsubishi.  The Prez y Ca. dock and
storage lot were chosen by San Juan Mercantile Corp., Mitsubishi's
agent and stevedoring contractor.  San Juan Mercantile was
responsible for the vehicles from the time of discharge until they
were delivered to Mitsubishi.
          Tokyo Marine had a working arrangement with Intermodal
Transportation Services, Inc. ("Intermodal"), a Florida firm that
provides survey services, whereby Intermodal surveyed vehicle
damage claims presented to Tokyo Marine under the insurance policy
issued to Mitsubishi.  Pursuant to this arrangement, Intermodal's
surveyors would conduct "hatch and discharge" surveys of vehicle
shipments when they arrived at a port, and "first point of rest"
surveys just after the vehicles were discharged.  The purpose of
these surveys was to discover any damage to the vehicles, and to
determine whether such damage occurred before, during, or after the
discharge of the vehicles from the ship.
         After the M/V ORION HIGHWAY arrived, a local surveyor
retained by Intermodal performed hatch, discharge, and first point
of rest surveys of the shipment, and found the vehicles to be free
of paint damage.  When the vehicles were delivered to Mitsubishi a
week later, however, many were found to be covered with a light
dusting of paint.  It was later discovered that during the week
that the cars were parked at Prez y Ca.'s lot, Prez y Ca.
employees were also painting an ocean-going barge at a drydock
directly adjacent to the lot on its upwind side.  After hearing
evidence on the issue, the district court found that the Mitsubishi
vehicles were damaged by free-floating paint that wafted onto the
vehicles.   
         The district court also found that Mitsubishi vehicles
that arrived in seven other shipments over the next year and a half
were damaged in like manner while they were stored at the Prez y
Ca. lot.  The district court determined that the claim based on
the damage to the vehicles in the first shipment was time-barred,
but allowed the claims arising from the damage to vehicles in the
remaining seven shipments.  With regard to those claims, the
district court found that Prez y Ca. was negligent in permitting
the vehicles to be damaged because, although its employees knew of
the "over spray" problem, the company took no measures to avoid or
prevent the problem.  The district court also found that Mitsubishi
had not acted in a comparatively negligent manner by continuing to
store its vehicles at the Prez y Ca. lot because, short of
stopping vehicle shipments altogether, it could not prevent the use
of the Prez y Ca. berthing and vehicle storage facilities.  The
district court therefore entered judgment for the plaintiff in the
amount of $243,530.  Finally, the district court concluded that the
defendant had been obstinate in its conduct of this litigation and
was therefore liable for attorneys' fees pursuant to P.R. R. Civ.
P. 44.1. Both parties have appealed from the judgment below.
II.  Statute of Limitations  
         Tokyo Marine argues that the district court erred in
finding that its claim for the damage caused to the cars in the M/V
ORION HIGHWAY shipment was barred by the applicable statute of
limitations.  This tort action was brought under Puerto Rico's tort
statute, article 1802 of the Civil Code, P.R. Laws Ann. tit. 31,
5141.  Tort claims under article 1802 are subject to the one-year
statute of limitations provided by article 1868(2) of the Civil
Code, P.R. Laws Ann. tit. 31,  5298(2).  A cause of action under
article 1802 accrues - and the prescriptive period set by article
1868(2) therefore begins to run - when the injured party knew or
should have known of the injury and of the likely identity of the
tortfeasor.  See Coln-Prieto v. Gigel, 115 P.R. Dec. 232, 243
(1984).  As noted above, the district court found that the cars in
the M/V ORION HIGHWAY shipment were damaged at some point no later
than February 23, 1993.  This suit was filed on April 19, 1994,
more than one year after the cause of action had accrued.  
Therefore, unless the prescription of the cause of action was
interrupted, the cause of action relating to the cars in the M/V
ORION HIGHWAY shipment would be time-barred.
         Pursuant to article 1873 of the Civil Code, a
prescriptive period may be interrupted in one of three ways:  by
the institution of an action "before the courts, by extrajudicial
claim of the creditor, and by any act of acknowledgment of the debt
by the debtor."  P.R. Laws Ann. tit. 31,  5303 (official
translation 1991).  Although prescription is an affirmative
defense, once it has been raised, the burden of proving that
prescription has been interrupted shifts to the plaintiff.  SeeVelez-Rodrguez v. Pueblo Int'l, Inc., 135 P.R. Dec. ___, 1994 WL
909577, at *8 (Mar. 18, 1994); Zambrana-Maldonado v. Puerto Rico,
129 P.R. Dec. ___, 1992 WL 754997, at *4 (Jan. 30, 1992).  Under
article 1874 of the Puerto Rico Civil Code, the interruption of
prescription against one defendant also tolls the statute against
any other defendants who are solidarily liable with the first.  
See P.R. Laws Ann. tit. 31,  5304 ("Interruption of prescription
of actions in joint obligations equally benefits or injures all the
creditors or debtors.") (official translation 1991); Arroyo v.
Hospital La Concepcin, 130 P.R. Dec. ___, 1992 WL 755630, at *6
(June 5, 1992).  Regardless of the method used, when the
prescriptive period is successfully interrupted, the full period
begins to run again.  See Cintrn v. Puerto Rico, 127 P.R. Dec.
582, 589 (1990); Daz-de-Diana v. A.J.A.S. Ins. Co., 110 P.R. Dec.
471, 474 (1980).   
         Neither the first nor the third method of interrupting
prescription is applicable here: no suit concerning the events in
question was filed before April 19, 1994, and the defendants have
consistently denied liability.  The issue before us is therefore
reduced to the question whether the plaintiff interposed an
"extrajudicial claim" with regard to the M/V ORION HIGHWAY shipment
that successfully interrupted the prescription of the cause of
action before the original one-year term expired on February 23,
1994.
         The Supreme Court of Puerto Rico has often relied on a
definition of "extrajudicial claim" written by Spanish commentator
Luis Diez-Picazo:  
           In principle, claim stands for demand or
           notice.  That is:  it is an act for which
           the holder of a substantive right
           addresses the passive subject of said
           right, demanding that he adopt the
           required conduct.

Luis Diez-Picazo, La prescripcin en el Cdigo Civil [Prescription
in the Civil Code] at 130 (Barcelona, Ed. Bosch 1964) (translation
ours) (cited in Cintrn, 127 P.R. Dec. at 592;  Secretario del
Trabajo v. Finetex Hosiery Co., 116 P.R. Dec. 823, 827 (1986);
Daz-de-Diana, 110 P.R. Dec. at 476).  As this court has previously
explained, an extrajudicial claim is subject to only a few
requirements:
           [A]n extrajudicial claim does in fact
           include virtually any demand formulated by
           the creditor.  The only limitations are
           that the claim must be made by the holder
           of the substantive right (or his legal
           representative), . . . it must be
           addressed to the debtor or passive subject
           of the right, not to a third party, . . .
           and it must require or demand the same
           conduct or relief ultimately sought in the
           subsequent lawsuit.

Rodrguez-Nrvaez v. Nazario, 895 F.2d 38, 44 (1st Cir. 1990)
(citations omitted); see Galib-Frangie v. El Vocero, Inc., 138 P.R.
Dec. ___, 1995 WL 905884, at *3 (June 6, 1995) (enumerating
requirements for extrajudicial claims).  The prescriptive term is
interrupted on the date on which the defendant receives the
extrajudicial claim.  See Daz-de-Diana, 110 P.R. Dec. at 477.
         It follows that a letter sent by a tort plaintiff to the
tortfeasor, complaining of the tortious conduct and demanding
compensation, is an extrajudicial claim that, if timely, interrupts
the prescription of the cause of action in tort.  Tokyo Marine
argues that the parties involved in this suit sent each other
several letters that, either separately or in conjunction,
constituted extrajudicial claims that tolled the statute of
limitations for the cause of action arising out of the M/V ORION
HIGHWAY shipment.  Because we find that one of these letters
sufficed to interrupt the prescription of this cause of action, we
need not consider the others.  
         On January 10, 1994, Tokyo Marine's attorneys wrote a
letter to Prez y Ca.'s insurance company, Underwriters Adjustment
Co., Inc. ("UAC"), stating that:  
           We have been retained by the interested
           cargo underwriters to effect a recovery
           for damage to Mitsubishi automobiles due
           to paint over spray on February 15, 1993.  
           We are holding your assured, Prez y Ca.
           de Puerto Rico, Inc. responsible for this
           loss in the amount of $369,700.  The
           following is a breakdown of the damages:
           . . . .  Kindly acknowledge receipt of
           this claim notice and provide us with your
           settlement advises.  

The letter was timely, was sent by persons with standing to do so,
and sought the same relief subsequently claimed in this lawsuit.  
This letter therefore constituted an extrajudicial claim that
clearly interrupted the prescription of any claims against UAC.
         UAC, however, was never made a party to this suit.  Tokyo
Marine contends that the interruption of prescription with regard
to its claims against UAC also tolled the statute as to its claims
against Prez y Ca.  As noted above, under article 1874 of the
Civil Code, the interruption of the prescription of claims against
one defendant also interrupts the prescription of claims against
any other defendants who are solidarily liable with the first.  
Accordingly, Tokyo Marine argues that UAC is solidarily liable for
the damage caused by its insured, Prez y Ca.
         The concept of solidarity is defined by the provisions of
Civil Code articles 1090-1115, P.R. Laws Ann. tit. 31,  3101-12,
which establish the differences between mancomunal (similar to
"several") and solidary obligations.  As noted before, solidarity
is very similar to joint and several liability. See supra note 1.  
The essential feature of solidarity is that the solidary debtors
are jointly responsible for the the same obligation.  See Arroyo,
1992 WL 755630, at *1-2; Ramos v. Caparra Dairy, Inc., 116 P.R.
Dec. 60, 62-63 (1985).
         However, solidarity does not presuppose that the scope or
source of liability is identical for each solidary debtor.  To the
contrary, "[s]olidarity may exist, even though the creditors and
debtors are not bound in the same manner, and for the same periods
and under the same conditions."  P.R. Civ. C. art. 1093, P.R. Laws
Ann. tit. 31,  3104.   More generally, the entire set of
provisions regarding solidary obligations recognizes that solidary
debtors may be obligated to different degrees; thus the reference
to shares.  The same principle is implicit in P.R. Civ. C. art.
1101, which provides "[a] solidary debtor may utilize, against the
claim of the creditor, all the exceptions arising from the nature
of the obligation and those which are personal to him."  P.R. Laws
Ann. tit. 31,  3112.  After all, personal exceptions are precisely
those not shared by the other solidary debtors.
         One of the "secondary" consequences of categorizing an
obligation as solidary rather than mancomunal is that the rules
regarding the interruption of prescription are different.  SeeArroyo, 1992 WL 755630, at *5.  Specifically, the "[i]nterruption
of prescription of actions in joint obligations equally benefits or
injures all the creditors or debtors," while "in [mancomunal]
obligations, when the creditor does not claim from one of the
debtors more than the part pertaining to him, prescription is not
interrupted for that reason with regard to the other co-debtors."  
P.R. Civ. C. art. 1874.  The reason for the difference is that
solidarity is based on the theory that there is one obligation,
shared by several debtors.  See Arroyo, 1992 WL 755630, at *5.  The
interruption of the prescription of the cause of action based on
that unitary obligation therefore need only be performed once.
         There are two sources of solidarity: contract and
statute.  See Arroyo, 1992 WL 755630, at *2-3 & n.3 ("Solidarity
exists by the will of the parties or by law.") (translation ours).  
The provisions cited above apply equally to both contractual and
statutory solidarity; the only difference between them is that
while contractual obligations are presumed not to be solidary
unless there is an express agreement to the contrary, see P.R. Civ.
C. art. 1090, statutory solidarity operates without regard to the
parties' consent to be so bound with each other, see Arroyo, 1992
WL 755630, at *3 (holding that joint tortfeasors are solidarily
liable).
         Tokyo Marine has not argued that UAC and Prez y Ca.
expressly agreed to be solidarily liable to any persons injured by
Prez y Ca.  The question is therefore whether the liability of an
insurer for the harm caused by its insured can be described as
solidary liability.  In order to answer this question, we look to
the only case in which the Supreme Court of Puerto Rico has
explicitly held that a statute had imposed a variety of solidary
liability.  See Arroyo, 1992 WL 755630.  In that case, the Puerto
Rico Supreme Court concluded that joint tortfeasors are solidarily
liable, even though P.R. Civ. C. art. 1802 does not explicitly
mention solidarity.  See id. at *4.  The Puerto Rico Supreme Court
based its conclusion on the nature and scope of tort liability.  
Under article 1802, when the negligent acts of more than one person
have adequately caused a harm, each such person is a joint
tortfeasor who is liable in full to the plaintiff for the harm
caused.  The Puerto Rico Supreme Court found that the relationship
between the liabilities of joint tortfeasors was indistinguishable
from the contractual solidarity described in P.R. Civ. C. art. 1090
because joint tortfeasors, like contractual solidary debtors, are
jointly liable for the same obligation.  See P.R. Laws Ann. tit.
31,  3101; Arroyo, 1992 WL 755630, at *4.  The Puerto Rico Supreme
Court therefore held that article 1874 of the Civil Code applies to
joint tortfeasors, so that the timely filing of a suit against one
joint tortfeasor had interrupted the prescription of the suit
against the other tortfeasors.  See Arroyo, 1992 WL 755630, at *5.
         Applying the analysis employed in Arroyo, we conclude
that the Puerto Rico Supreme Court would hold that insured
defendants and their insurance companies are solidarily liable for
the acts of the insured.  The Puerto Rico Insurance Code specifies
the nature and extent of a liability insurer's responsibility for
the damage caused by its insured.  In particular, article 20.010 of
the Insurance Code makes liability insurers absolutely liable to
persons injured by their insured.  See P.R. Laws Ann. tit. 26,
2001.  Article 20.010 must be read in conjunction with article
20.030, according to which an injured party may bring an action
directly against the tortfeasor's liability insurer, or against
both the tortfeasor and the insurer.  See P.R. Laws Ann. tit. 26,
2003.  Admittedly, article 20.030 does not state explicitly that
tortfeasors and their insurers are liable in solido, which raises
the possibility that the Puerto Rico Legislature did not intend to
make them so.  But then, P.R. Civ. C. art. 1802 does not explicitly
mention solidarity, either.  As in the case of joint tortfeasors,
the liability imposed by the Insurance Code upon insurers is co-
extensive with that of their insured, up to the limits of the
policies in question.   
         Moreover, the fact that the statutory sources of
liability for a tortfeasor and its insurer are different does not
prevent their liabilities from being solidary.  As noted above,
"[s]olidarity may exist, even though the creditors and debtors are
not bound in the same manner, and for the same periods and under
the same conditions."  P.R. Civ. C. 1093.
         Our conclusion that an insurer and its insured are
solidarily liable is bolstered by the Puerto Rico Supreme Court's
determination that a suit against an insurer may be filed up to one
year after judgment is entered in a suit against the insured.  SeeBarrientos v. Gobierno de la Capital, 97 P.R. Dec. 552, 576-77
(1969) (interpreting P.R. Ins. C. art. 20.030(2)).  The holding in
Barrientos is consistent with our conclusion; as we noted above,
one of the secondary consequences of solidarity is that the
interruption of prescription as to one solidary debtor affects the
other solidary debtors, see P.R. Civ. C. art. 1874, so that a suit
against one joint tortfeasor may be filed up to one year after
judgment is entered in a suit against another joint tortfeasor, seeArroyo, 1992 WL 755630, at *5.
         While the Puerto Rico Supreme Court has not decided this
issue, three justices have addressed it in dicta.  All agree with
our conclusion.  For example, in an opinion dissenting on a
different issue, Associate Justice Rebollo explicitly stated that,
"[a]s is well-known, an insurance company . . . is solidarily
liable for the negligent acts that its insured may commit."  Torresv. Puerto Rico, 130 P.R. Dec. ___, 1992 WL 755617, at *2 (June 8,
1992) (translation ours).  Similarly, Associate Justice Naveira de
Rodn noted in her concurrence in another case that the defendants
therein -- a leasing company, its insurance company, and the
lessor-driver -- were solidarily liable for injuries resulting from
the driver's negligence.  See Marrero-Albino v. Vzquez-Egean, 135
P.R. Dec. ___, 1994 WL 909230, at *2 (Feb. 24, 1994).  In an
opinion dissenting on other grounds in that same case, Associate
Justice Fuster-Berlingeri also wrote that "there is no doubt
whatsoever as to the solidarity existing between the tortfeasor, .
. . the company that owned the vehicle that he was driving, and its
insurer."  Marrero-Albino, 1994 WL 909232, at *5.  As Justice
Fuster explained, "in light of the clear literal sense and purposes
served by [P.R. Ins. C. art. 20.010], it is necessary to conclude
that, with regard to the plaintiff's claim, the three defendants
. . . were equally situated from a legal point of view, as if they
were one party with regard to the claim made by the plaintiff."  
Id.
         More oblique support for this conclusion is found in
Miranda v. Puerto Rico, 137 P.R. Dec. ___, 1994 WL 908883, at *6
(Dec. 7, 1994), in which the Puerto Rico Supreme Court affirmed the
trial court's judgment, which, among other things, held the
defendants and their insurance companies to be solidarily liable
for the award of damages.  Similarly, in Trigo v. The Travelers
Insurance Co., 91 P.R. Dec. 868 (1965), the Puerto Rico Supreme
Court reversed a trial court's determination that a claim against
the insurer was time-barred, even though the plaintiff had made a
timely extrajudicial claim against it.  Since the trial court
reasoned that the interruption of prescription against the insurer
had not interrupted prescription against the insured, the Puerto
Rico Supreme Court could be understood to have disapproved of the
trial court's implicit determination that the insured was not
liable in solido with its insurer.  Cf. Neptune Packing Corp. v.
The Wackenhut Corp., 120 P.R. Dec. 283, 289 (1988) (stating that
claims against insurer and insured should generally be brought in
the same suit rather than separately).
         The handful of cases that could be read to support the
opposite conclusion - that defendants and their insurers are not
solidarily liable - appear to us to be less compelling.  For
example, in Velilla v. Pueblo Supermarkets, Inc., 111 P.R. Dec. 585
(1981), the plaintiff-appellant had originally communicated with
the defendant, Pueblo Supermarkets.  Pueblo, however, referred the
plaintiff to International Claims Investigators, Inc., an
independent insurance adjuster.  When, more than a year afterwards,
the plaintiff filed suit against Pueblo, Pueblo moved for and
obtained dismissal of the suit on the basis that the cause of
action was barred by the statute of limitations because the
insurance adjuster was not its agent.  The Supreme Court reversed,
but not because the claims made against the insurer had
simultaneously interrupted prescription as to Pueblo.  Instead, the
Supreme Court merely held that Pueblo was equitably estopped from
raising the time-bar defense.  Although one could read the choice
of rationale as a suggestion that the claim against the insurer
does not simultaneously interrupt prescription as to the insured,
we find the inference weak because there were other, more likely
reasons why the court decided as it did.
         Furthermore, our conclusion is consistent with the
history and purpose of P.R. Ins. C. arts. 20.010 and 20.030, which
were intended to reverse by statute a number of decisions of the
Puerto Rico Supreme Court.  In Cruz-Nieves v. Gonzlez, 66 P.R.
Dec. 212 (1946), the plaintiff had timely filed an extrajudicial
claim with the defendant's insurance company, but did not file suit
against the defendant until more than a year after the accident.  
When the defendant raised the failure to file suit within the one
year period required by P.R. Civ. C. art. 1868, the plaintiff
countered that the prescription of her action against the defendant
had been interrupted by the extrajudicial claim against the
insurance company because the two were solidarily liable.   
         At issue in Cruz-Nieves was article 175 of the former
Insurance Law of Puerto Rico (predecessor to the current Insurance
Code), which permitted a plaintiff to file a claim against an
insurance company jointly with the insured.  In the court's view,
an insurance company was liable under article 175 only if its
insured were found liable.  The court accepted for purposes of
argument the plaintiff's contention that the insurance company was
directly liable to her and therefore that her extrajudicial claim
against the company interrupted the prescription of her claim
against the company.  Nevertheless, since the claim against the
defendant was barred by the statute of limitations, the insurance
company could not be liable.  Based on this transparently circular
reasoning, the court rejected her argument and affirmed the
dismissal of her complaint.  Noting that "solidarity is not
presumed, nor does it exist unless it has been expressly agreed
to," the court also concluded that the liability of the defendant
and its insurance company could not be solidary because the
complaint had not alleged that the insurance contract had expressly
provided that the insurance company would be directly liable to
third parties.  Id. at 214.
         One year later, the Puerto Rico Supreme Court expressly
rejected the claim that it had accepted for purposes of argument in
Cruz-Nieves; namely, the argument that an insurance company was
directly liable to a person injured by its insured.  See United
States Cas. Co. v. Corte de Distrito de Arecibo, 66 P.R. Dec. 937,
939 (1947).  The court held that article 175 of the Puerto Rico
Insurance Law did not create a cause of action against an insurer.  
The court explained that article 175 authorized a claim against an
insurer only when the plaintiff had already obtained a judgment
against the insured defendant, or when the insurer had been named
a party to the same suit as the insured.  See id.  Based on its
decisions in Cruz-Nieves and United States Casualty Co., the Puerto
Rico Supreme Court subsequently held that the extrajudicial claim
made to the insurer within the one-year prescriptive period did not
interrupt the prescription of the claim against the insured.  SeeBithorn-Huicy v. Santana, 68 P.R. Dec. 300, 306 (1948); see alsoGuerra v. Ortiz, 71 P.R. Dec. 613, 624 (1950); Autoridad de Fuentes
Fluviales v. Irizarry, 72 P.R. Dec. 644, 650 (1951).
         As the Puerto Rico Supreme Court noted several years
later, the excessively technical interpretation of the law adopted
in this series of cases placed a number of frustrating roadblocks
in the way of injured persons who sought compensation from the
insurers of the persons who injured them.  See Trigo v. The
Travelers Ins. Co., 91 P.R. Dec. 868, 871 (1965).  It was no
coincidence, surmised the Trigo court, that the Legislative
Assembly of Puerto Rico amended article 175 in 1952 to allow
plaintiffs the option of suing insurance companies either directly,
or jointly with the insured.  See Act No. 60 of April 17, 1952.  By
permitting a direct suit against an insurer, the amended section
175 seemed to establish a separate, direct cause of action against
insurers.
         That interpretation of the amendment, however, was
rejected in Prez v. Maryland Casualty Co., 78 P.R. Dec. 475
(1955).  In Prez, Associate Justice Snyder (the author of the
court's opinion in Bithorn-Huicy) wrote for the court that the 1952
amendment was merely procedural, permitting a suit to go forward
even when the insured was not amenable to service of process.  The
court held that the amendment had not created a direct cause of
action against insurers, such as the one provided by Louisiana law,
because a plaintiff still had to prove that the insured was liable.  
See id. at 480 & n.3 (citing La. Rev. Stat. Ann. tit. 22,  655);
see also Landol v. Coln, 78 P.R. Dec. 602 (1955) (following
Prez); but see Aponte v. American Surety Co., 276 F.2d 678 (1st
Cir. 1960) (holding that 1952 amendment created new direct cause of
action against insurers).
         As the Trigo court remarked, the Prez opinion rendered
the 1952 amendment effectively irrelevant.  See 91 P.R. Dec. at
873.  In 1957, however, the old insurance law was repealed and
replaced by the current Insurance Code.  See Act No. 77 of June 19,
1957, P.R. Laws Ann. tit. 26.  The new code contained a number of
provisions, particularly articles 20.010 and 20.030, that clearly
established a direct cause of action against insurers.  See Trigo,
91 P.R. Dec. at 874.  It is evident that the enactment of P.R. Ins.
C. arts. 20.010 and 20.030 was intended to reverse the Puerto Rico
Supreme Court's decisions in Cruz-Nieves, United States Casualty
Co., Bithorn-Huicy, Guerra, Autoridad de Fuentes Fluviales, Prez,
and Landol.  Since these cases held, among other things, that an
insurer and its insured were not solidarily liable, their reversal
supports (although, admittedly, does not compel) the conclusion
that the direct liability newly imposed upon insurers is solidary
with the liability of their insured.
         The court also noted in Trigo that P.R. Ins. C. art.
20.030 uses "language [that is] very similar to the one in the
Louisiana legislation to which we made reference in the Prez case,
which makes the insurer substantively and directly responsible" for
the harm caused by its insured.  Trigo, 91 P.R. Dec. at 874
(translation ours).  Under Louisiana law, the insurer and the
insured are joint and solidary obligors, and, thus, a suit against
the insurer interrupts prescription against the insured.  SeeHoefly v. Government Employees Ins. Co., 418 So.2d 575 (La. 1982);
Pearson v. Hartford Accident & Indemn. Co., 281 So.2d 724, 726-27
(La. 1973); Tuck v. Commercial Standard Ins. Co., 164 So.2d 472
(La. App. Ct. 1935); see also Cormier v. Clemco Servs. Corp., 48
F.3d 179 (5th Cir. 1995); McDermott v. Crown Zellerbach Corp., 418
F.2d 598 (5th Cir. 1969); Melancon v. The Travelers Ins. Co., 209
F. Supp. 68 (W.D. La. 1962); see generally H. Alston Johnson, The
Louisiana Direct Action Statute, 43 La. L. Rev. 1455, 1506-14
(1983).  It is reasonable to conclude that in adopting a rule based
on Louisiana law, the Puerto Rico Legislative Assembly intended for
the rule to be interpreted in a similar manner.  See Garca v.
Northern Assurance Co., 92 P.R. Dec. 245, 250-53 (1965) (relying on
Louisiana case law in order to interpret P.R. Ins. C. art. 20.030
because it was derived from Louisiana law).
         In sum, we conclude that an insured defendant is
solidarily liable with its liability insurance company.  Thus, the
timely interruption of prescription as to UAC had a like effect as
to its insured, Prez y Ca.  See P.R. Civ. C. art. 1874, P.R. Laws
Ann. tit. 31,  5304.  Accordingly, we find that the district court
erred in dismissing as time-barred Tokyo Marine's cause of action
based on the damage to the vehicles in the M/V ORION HIGHWAY
shipment.   
         In the normal course of events, we would remand this case
for further proceedings.  In this case, however, the district court
had already made a finding as to amount of the damages to the
vehicles in the M/V ORION HIGHWAY shipment, setting the finding
aside only because the court determined that the claim was time-
barred.  Specifically, the district court found that the damages
accruing under such claim amounted to $90,500.  We therefore amend
the judgment for Tokyo Marine to increase its award by $90,500, for
a total of $334,030.
III.  Finding of Liability and Award of Damages
         Prez y Ca. raises on appeal a number of arguments as to
why the district court's findings of liability and award of damages
were erroneous.  In particular, Prez y Ca. contends that the
district court erred in determining that Prez y Ca. caused the
paint damage to the cars, in failing to determine that the docking
permit application absolved it of any liability for damage to the
vehicles, in failing to determine that Tokyo Marine's insured,
Mitsubishi, was comparatively negligent in failing to mitigate
damages, and in assessing special damages.  All of these arguments,
except for the one concerning interpretation of the docking permit
application, are challenges to the district court's findings of
fact.  We review such findings only for clear error, see Fed. R.
Civ. P. 52(a), and find such error only where we are firmly
convinced that a mistake has been made, see Strahan v. Coxe, 127
F.3d 155, 172 (1st Cir. 1997).
         After reviewing the evidence, we conclude that the
district court's findings of liability and damages were not clearly
erroneous.  There was evidence before the court supporting its
conclusions that the ship painting operations caused the damage to
the cars, that there was no alternative location where Mitsubishi
could have stored the vehicles, and that Mitsubishi mitigated
damages by promptly restoring the vehicles to their original
condition, thereby preventing further damages such as decreased
sales.  Similarly, there was evidence to support the court's
finding that the amounts paid by Mitsubishi to Professional Car
Paint, the company that repaired the vehicles, were reasonable.
         Prez y Ca. had also argued that liability was
foreclosed by clause 9 of the docking permit application, which
stated that "Prez assumes no responsibility for the safety of the
cargo or equipment handled by the applicant . . . while this cargo
is being handled or in storage in the facilities of Prez."  Under
Puerto Rico law, however, such release clauses are interpreted
against exoneration because releases from liability for future
negligent conduct are not favored.  See Cabrera v. Doval, 76 P.R.
Dec. 777, 781 (1954).  Thus, such a clause will release a party
from liability for future negligence only where the clause clearly
and explicitly states so.  We agree with the district court that
clause 9 did not meet this standard.
IV.  Award of Attorneys' Fees

         Rules 44.1(d) and 44.3(b) of the Puerto Rico Rules of
Civil Procedure require trial courts to award attorney's fees and
interest against parties that have litigated "obstinately or
frivolously."  P.R. Laws Ann. tit. 32, app. III R. 44.1(d),
44.3(b).  "The purpose behind the rules is to penalize 'a losing
party that because of his stubbornness, obstinacy, rashness, and
insistent frivolous attitude has forced the other party to
needlessly assume the pains, costs, efforts, and inconveniences of
a litigation.'"  Dopp v. Pritzker, 38 F.3d 1239, 1253 (1st Cir.
1994) (quoting Fernndez v. San Juan Cement Co., 118 P.R. Dec. 713,
718 (1987)).  The district court below found that Prez y Ca. had
been obstinate in this litigation and was therefore liable for
attorneys' fees.  Reviewing this determination for abuse of
discretion, see Dopp, 38 F.3d at 1253, we find none.
         The decision of the district court is affirmed in part,
reversed in part, and amended as to damages, as discussed above.  
Costs are awarded to the plaintiff.

</body>

</html>